UNITED STATES of America,
Appellee,

v.

Simeon Jessamy COKE, Appellant.

No. 431, Docket 29975.

United States Court of Appeals
Second Circuit.

Argued June 14, 1966.

Decided July 18, 1966.

Robert Kamenshine, New York City (Anthony F. Marra, New York City, on the brief), for appellant.

Daniel Donnelly, Asst. U. S. Atty., Southern Dist. of New York (Robert M. Morgenthau, U. S. Atty., and John A. Stichter, Asst. U. S. Atty., Southern Dist. of New York, on the brief), for appellee.

Before HAYS, ANDERSON and FEINBERG, Circuit Judges.

ANDERSON, Circuit Judge:

This appeal is from a judgment of conviction entered upon a jury verdict which found the appellant guilty on each of three counts of an indictment charging him with the sale and possession of cocaine hydrochloride in violation of 21 U.S.C. §§ 173 and 174. The appellant is before this court for the second time on appeal following an earlier reversal of his conviction and a remand for a new trial. United States v. Coke, 339 F.2d 183 (2d Cir. 1964).

The issue on this appeal is limited to the claim that the presumption in § 174 which authorizes the jury to infer the facts of illegal importation and knowledge thereof from the mere fact of possession, where the defendant has not explained the possession to the satisfaction of the jury, is unconstitutional where the narcotic drug found in his possession is cocaine hydrochloride. There was no proof by the Government at the trial which would tend to show that the cocaine hydrochloride possessed by Coke was illegally imported or that he had knowledge that it was illegally imported. The case went to the jury on those issues solely on the basis of the statutory presumption.

Erwing v. United States, 323 F.2d 674 (9th Cir. 1963), is apparently the first case in which this specific claim came before a court. In that case, the court applied the "rational connection" test of

Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943) in evaluating the constitutional validity of the presumption as applied in a case where the narcotic drug was cocaine hydrochloride. Extensive expert testimony was introduced at the trial in *Erwing* to the effect that all of the cocaine hydrochloride dispensed in California in the area of Los Angeles came from domestic sources. The Court of Appeals concluded from this that there was no rational connection between the basic fact of possession and the presumed facts of illegal importation and the knowledge thereof insofar as cocaine hydrochloride was concerned.

Not long thereafter, the same argument was advanced in this court in United States v. Martinez, 333 F.2d 80 (2d Cir. 1964), cert. denied, 379 U.S. 907, 85 S.Ct. 199, 13 L.Ed.2d 178 (1964). In that case, and in the subsequent case of United States v. Reid, 347 F.2d 344 (2d Cir. 1965), we held that the issue would not be considered by this court unless a record was made in the trial court which tended to show the source of manufacture of the cocaine hydrochloride available in this country.

■ In the present case, there was again no record made in the trial court. Indeed, no objection to the use of the presumption was made in the trial court. The general objection attacking the sufficiency of the Government's case was not sufficient properly to raise and preserve the constitutional question. United States v. Indiviglio, 352 F.2d 276, 279–280 (2d Cir. 1965). We do not, however, rely on waiver or lack of specificity of the objection in affirming the appellant's conviction.

The appellant on this appeal submitted, in lieu of any evidence in the trial record concerning the sources of cocaine hydrochloride, a very short excerpt from the 1962 and 1963 reports of the Commissioner of Narcotics.[1] The statistics contained in the excerpts submitted to this court in lieu of the proof required by *Martinez* and *Reid* are contained in the footnote below.[2]

■ It is apparent that we must give some significant weight to the capacity of Congress "to amass the stuff of actual experience and cull conclusions from it" when the constitutional validity of a statutory presumption is under consideration. United States v. Gainey, 380 U.S. 63, 67, 85 S.Ct. 754, 757, 13 L.Ed.2d 658 (1965). Even if we were to take judicial notice of the excerpted statistics relied upon by the appellant, we are of the opinion that those statistics are neither sufficiently complete nor persuasive as proof that the basic and presumed facts are without "rational connection." There is no indication of how much cocaine hydrochloride is actually imported into the United States, either illegally or legally, nor is there any indication of how much of the cocaine hydrochloride which is manufactured and distributed

1. Title 5, § 282 of the United States Code provides that the Commissioner, as head of the Federal Bureau of Narcotics, "shall make an annual report to Congress." This annual report is entitled "Traffic in Opium and Other Dangerous Drugs."

2. The following data for 1962 and 1963 appears as to the manufacture, disposition, and illegal importation of cocaine hydrochloride (columns 1–4) and as to thefts of narcotic drugs generally (column 5). All figures are in grams.

| | (1)<br>Cocaine<br>Produced | (2)<br>Domestic<br>Cocaine to<br>Authorized | (3)<br>Cocaine | (4)<br>Seizure of<br>Illegally<br>Imported | (5)<br>All Domestic<br>Narcotics<br>Reported by<br>Registrants |
|---|---|---|---|---|---|
| Year | in U. S. | Outlets | Exported | Cocaine | as Stolen |
| 1962 | 635,000 | 516,000 | 120,000 | 10,646 | 65,320 |
| 1963 | 736,000 | 431,000 | 274,000 | 8,386 | 77,660 |

in this country under close Government supervision and regulation finds its way into the hands of unlicensed users as a result of thefts or illegal diversion. Finally, there is absolutely no basis in these statistics for deciding whether the presumption that the cocaine hydrochloride in illicit channels comes from illegally imported quantities is constitutionally invalid.

The judgment of conviction is affirmed.