**Anthony MIRRA, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 100, Docket 32509.**

United States Court of Appeals Second Circuit.

Submitted Oct. 3, 1968.

Decided Nov. 1, 1968.

Anthony Mirra, pro se.

Douglas S. Liebhafsky, Asst. U. S. Atty. (Robert M. Morgenthau, U. S., Atty. for the Southern District of New York, David A. Luttinger and Charles P. Sifton, Asst. U. S. Attys., on the brief), for appellee.

Before LUMBARD, Chief Judge and KAUFMAN and HAYS, Circuit Judges.

LUMBARD, Chief Judge:

On June 26, 1962, appellant Anthony Mirra was sentenced, without a jury trial, to a term of one year for criminal contempt by Judge MacMahon of the Southern District of New York. In 1966, after Mirra had exhausted all of his appellate remedies, the Supreme Court decided in Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966), that federal courts could not impose criminal contempt sentences of more than six months unless the defendant had been afforded a jury trial. We have applied this rule in two cases which were on direct appeal at the time Cheff was decided. United States v. Harris, 367 F.2d 826 (2d Cir. 1966); United States v. Ferrara, 377 F.2d 16 (2d Cir. 1967). Judge MacMahon denied on May 1, 1968,

appellant's motion that his criminal contempt sentence be vacated. This appeal raises the question of whether the rule of *Cheff* should be applied retroactively to cases which had become final before it was rendered.

We hold that *Cheff* should be applied retroactively since to do so will not unduly disrupt the administration of justice. Accordingly, we modify the order of June 26, 1962, to reduce appellant's criminal contempt sentence to a period of six months; appellant is granted a credit of six months against the term which he is now serving.

The Supreme Court has established three criteria to be applied in determining whether a decision declaring new doctrines in the area of criminal law should be applied only prospectively:

"(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967).

Since this court in the *Harris* and *Ferrara* cases, supra, has already decided that *Cheff* should be applied retroactively to cases which were on direct appeal at the time it was decided, the real question before us is whether the criteria outlined in Stovall v. Denno should cause us to hold differently with respect to cases which had become final before *Cheff*. We note at the outset that the Supreme Court, in a case involving the application of a decision analogous to *Cheff*, saw "no basis for a distinction between convictions that have become final and cases at various stages of trial and appeal." DeStefano v. Woods, 392 U.S. 631, 635 n. 2, 88 S.Ct. 2093, 2096, 20 L.Ed.2d 1308 (1968). See generally United States v. Tarrago, 398 F.2d 621 (2d Cir. July 3, 1968) (Lumbard, C. J., concurring). We see no basis for such a distinction in this case.

The rule in *Cheff* is not so essential to "the very integrity of the fact-finding process" that its retroactive application is compelled. See generally Linkletter v. Walker, 381 U.S. 618, 638, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); cf. DeStefano v. Woods, 392 U.S. 631, 634–635, 88 S.Ct. 2093 (1968). Thus we must consider the other two criteria established by the Court, those relating to reliance upon the old rule and to the possible disruptive effect of the retroactive application of the new rule. Certainly there can be no distinction between this case and *Harris* and *Ferrara* on grounds of reliance. The sentences in both of those cases were imposed before the Supreme Court's decision in *Cheff*, as is true here.

We come to the criteria which has proven decisive in all Supreme Court decisions giving only prospective effect to a new criminal law standard: Will the retroactive application of *Cheff* "seriously disrupt the administration of our criminal laws"? Johnson v. State of New Jersey, 384 U.S. 719, 731, 86 S.Ct. 1772, 1780, 16 L.Ed.2d 882 (1966). The answer to this question inheres largely in the types of remedies available to a court to effectuate retroactive application. In cases such as Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731 (1965), Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772 (1966), and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967 (1967), the Supreme Court could have applied a rule retroactively only at the cost of invalidating large numbers of criminal convictions. In each of these instances it would have been necessary to retry hundreds of prisoners despite the possible loss of witnesses and evidence decisive in the original trials; failing the necessary evidence they would have been released. Prospective application was virtually compelled by these circumstances.

The same was true with respect to DeStefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093 (1968). In that case the court refused to apply retroactively Bloom v. State of Illinois, 391 U.S. 194,

88 S.Ct. 1477, 20 L.Ed.2d 1522 (1968), which held that the constitutional right to a jury trial extends to both federal *and* state trials for serious criminal contempts. Retroactive application of *Bloom*, the court noted, would involve "invalidating all serious contempt convictions," thus causing substantial "adverse effects on the administration of justice * * *." 392 U.S. at 635, 88 S.Ct. at 2096.

 The situation of those who received federal contempt sentences, without a jury trial, prior to Cheff v. Schnackenberg stands upon a very different footing. The court's rule in *Cheff* was decided "in the exercise of the Court's supervisory power and under the peculiar power of the federal courts to revise sentences in contempt cases * * *." 384 U.S. at 380, 86 S.Ct. at 1526. The court carefully concluded its opinion with this passage:

"Nothing we have said, however, restricts the power of a reviewing court, in appropriate circumstances, to revise sentences in contempt cases tried with or without juries." 384 U.S. at 380, 86 S.Ct. at 1526.

Thus we can apply *Cheff* retroactively in a manner which will not unduly disrupt the administration of justice. Mirra's sentence can be reduced by a period of six months to bring it into conformity with the holding of *Cheff*. This resolution does not invalidate appellant's conviction, and therefore does not require that a trial be held.

 An argument can be made that this appeal is moot because technically appellant already has served his contempt sentence and is now in prison pursuant to a consecutive 20 year sentence for conspiracy. But it is apparent that the last six months appellant serves in prison will be the result of the excessive contempt sentence imposed upon him. We offend no notions of mootness by relieving appellant from the continuing "disabilities and burdens" which "flow" from the imposition of this unlawful sentence. Fiswick v. United States, 329 U.S. 211, 220, 67 S.Ct. 224, 91 L.Ed. 196 (1946); see Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (May 20, 1968); United States v. Morgan, 346 U.S. 502, 512–513, 74 S.Ct. 247, 98 L.Ed. 248 (1954).

The order of the district court is modified to reduce the term of appellant's criminal contempt sentence from one year to six months. The United States Attorney is directed to notify the appropriate officials in the Department of Justice and the Bureau of Prisons that Anthony Mirra is to be credited with a period of six months against the sentence for conspiracy which he is presently serving.