**UNITED STATES of America, Appellee,**

v.

**Simeon Jessamy COKE, Appellant.**

**No. 529, Docket 32241.**

United States Court of Appeals
Second Circuit.

Argued June 21, 1968.

Ordered to be considered in banc,
Oct. 17, 1968.

Decided Nov. 27, 1968.

Moore, Circuit Judge, dissented.

Robert D. Kamenshine, Nashville, Tenn. (Anthony F. Marra, Legal Aid Society, New York City), for appellant.

Abraham D. Sofaer, Asst. U. S. Atty., (Robert M. Morgenthau, U. S. Atty. for the Southern District of New York, John E. Sprizzo and Pierre N. Leval, Asst. U. S. Attys., of counsel), for appellee.

Before LUMBARD, Chief Judge, and WATERMAN, MOORE, FRIENDLY, SMITH, KAUFMAN, HAYS, ANDERSON and FEINBERG, Circuit Judges.

FRIENDLY, Circuit Judge:

Simeon Jessamy Coke was indicted in the District Court for the Southern District of New York in April 1963 for three sales of narcotics in violation of 21 U.S.C. §§ 173–174. A trial before Judge MacMahon and a jury in May 1963 resulted in a disagreement. On a second trial before the late Judge Dawson and a jury in June 1963, Coke was convicted on all three counts. On the same day, without awaiting a presentence report, Judge Dawson sentenced him to concurrent terms of six years. We reversed the conviction because of comments by the judge which could have been taken as reflecting on the defendant. United States v. Coke,

339 F.2d 183 (2 Cir. 1964). A third trial before Judge Cooper and a jury in January 1965 again resulted in conviction on all three counts. With the benefit of a full pre-sentence investigation and report, which in his view showed the six year sentence to have been too lenient, Judge Cooper imposed five year sentences on Counts 1 and 2, to be served consecutively, and a five year sentence on Count 3 to be served concurrently, with credit for time already served. Coke appealed his conviction but made no complaint as to the higher sentence. We affirmed, United States v. Coke, 364 F.2d 484 (2 Cir. 1966), cert. denied, 386 U.S. 918, 87 S.Ct. 877, 17 L.Ed.2d 789 (1967). In March 1967, he filed a petition under 28 U.S.C. § 2255 challenging the increased sentence. Judge Cooper denied the application, and this appeal followed. It was heard initially by a panel consisting of Circuit Judges Moore and Friendly and District Judge Bryan, who had joined in an opinion substantially as here written; subsequently, by vote of all active judges, it was determined that the appeal be considered *in banc* upon the briefs already filed. Since then the Supreme Court has granted certiorari in two cases presenting the constitutional issue here considered. North Carolina v. Pearce, 393 U.S. 922, 89 S.Ct. 258, 21 L.Ed.2d 258 (Oct. 29, 1968); Simpson v. Rice, 393 U.S. 932, 89 S.Ct. 292, 21 L.Ed.2d 268 (Nov. 12, 1968).

## I.

Coke first attacks the increased sentence under the Double Jeopardy Clause of the Fifth Amendment. This instructs that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb," a protection long since expanded to include other criminal sanctions. As well said by Judge Sobeloff in Patton v. North Carolina, 381 F.2d 636, 643–644 (4 Cir. 1967), cert. denied, 390 U.S. 905, 88 S.Ct. 818, 19 L.Ed.2d 871 (1968), the Clause embraces three separate rules "prohibiting (1) reprosecution for the same offense following acquittal, (2) reprosecution for the same offense following conviction, and (3) multiple punishment for the same offense." We can speedily dismiss the second "rule," since it has long been held in this country that the Double Jeopardy Clause does not forbid a retrial following the setting aside of a conviction. United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896); United States v. Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964). It is unnecessary to predicate this principle either on the fiction of a "waiver" or on the more nearly satisfactory basis of "continuing jeopardy," see Mayers and Yarbrough, *Bis Vexari:* New Trials and Successive Prosecutions, 74 Harv.L.Rev. 1, 5–8 (1960); it suffices that freedom would be a disproportionate reward for a trial error. See Fisher, Double Jeopardy: Six Common Boners Summarized, 15 U.C.L.A.L.Rev. 81, 83–84 (1967).

The fountainhead of the "multiple punishment" rule is Ex parte Lange, 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1873). Under a statute permitting imprisonment for not more than a year *or* a fine of not more than $200, Lange had been sentenced to the maximum of both. He paid the fine and began serving his sentence, but immediately sued out a writ of habeas corpus. The judge sentenced him to a year's imprisonment and dismissed the writ—the fine apparently to be repaid. On a second writ this was held to violate the Double Jeopardy Clause. Mr. Justice Miller's reasoning was straightforward. A second prosecution for the same offense is prohibited in order to protect not simply against the annoyance of trial but against a second punishment. The government stands no better when it achieves the second punishment without a second trial. However, the opinion was at pains to recognize that "there is a class of cases in which a second trial is had without violating this principle. As when the jury fail to agree and no verdict has been rendered, or the verdict set aside on motion of the accused, or on

writ of error prosecuted by him, or the indictment was found to describe no offense known to the law." 85 U.S. (18 Wall.) at 173–174, 21 L.Ed. 872. While nothing was there said, or had to be, as to whether the sentence on the second trial might exceed that on the first, the Court crossed that bridge in Murphy v. Massachusetts, 177 U.S. 155, 160, 20 S.Ct. 639, 641, 44 L.Ed. 711 (1900),[1] where it said that when a prisoner had successfully claimed he should not have been sentenced under an act not in effect at the date of his crime but under antecedent statutes, the second sentence "might turn out to be for a longer period of imprisonment."

That issue was even more sharply presented in Stroud v. United States, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919), where after successful attack upon a verdict finding Stroud guilty of first degree murder "without capital punishment," a new trial resulted in a verdict not containing that recommendation and sentence of death was imposed. A unanimous Court held this was not forbidden by the Double Jeopardy Clause. Citation of Ex parte Lange, 251 U.S. at 18, 40 S.Ct. 50, sufficiently indicates the Court's rejection of any idea that the "multiple punishment" rule forbade a higher sentence on a new trial obtained as a result of the accused's appeal.

The *Stroud* opinion also reflects a rejection of the argument against increased punishment for the same offense that has been constructed on the remaining element of double jeopardy, namely, that prohibiting reprosecution for the same offense following acquittal. While much of Stroud's brief was de-

voted to the claim that, despite United States v. Ball, supra, the literal wording of the Double Jeopardy Clause forbade any retrial of a *capital* case, the brief also argued that the former verdict was an "acquittal of the species of charge warranting capital punishment," p. 89.[2] Although the argument was not put in the precise terms of *autrefois acquit*, it is incredible that a Court including Justices Holmes and Brandeis would not have been aware of the contention's double jeopardy implications. The opinion overruled the "implied acquittal" argument briefly but sufficiently: "The fact that the jury may thus mitigate the punishment to imprisonment for life did not render the conviction less than one for first degree murder." 251 U.S. at 18, 40 S.Ct. at 51.

■ We find nothing in Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), to indicate that the Court has altered the views as to double jeopardy followed in *Stroud*. The holding there was that when a defendant was tried for felony murder and was convicted for second degree murder, the double jeopardy clause prevented retrial for felony murder after reversal of the second degree murder conviction because of lack of evidence of intent to kill. In answer to the Government's argument that *Stroud* had upheld a higher punishment on a retrial, Mr. Justice Black characterized that case as "clearly distinguishable" since there "a defendant was retried for first degree murder after he had successfully asked an appellate court to set aside a prior conviction for that same offense." 355 U.S. at 194–195 n. 15, 78 S.Ct. at 227.[3] Green's case was different since

1. Murphy was represented by Ezra Ripley Thayer, later Dean of the Harvard Law School, Louis D. Brandeis, and Edward F. McClennen.

2. See also the passage at p. 93: "But even had the former verdict been set aside, yet as it acquitted defendant affirmatively of the heinous variety of the offense for which capital punishment could have been imposed the only issue which could have

been retried was the question of guilty or not guilty."

3. Coke's contention that the *Green* opinion's failure to mention the higher punishment on Stroud's retrial "verifies the Fourth Circuit's interpretation of *Stroud* as a case not dealing with multiple punishment," is scarcely reconcilable with Mr. Justice Frankfurter's pointed description of *Stroud* as "rejecting the conten-

the Government was retrying him for an offense of which the jury had not convicted, a result of which he naturally had not complained. While *Green* may have been more difficult on its facts than the majority of the Court assumed, see Mayers and Yarbrough, supra, 74 Harv.L.Rev. 22–27, successive prosecution for the same offense where not resulting from the defendant's own complaint is indubitably one of the evils against which the Double Jeopardy Clause aimed to protect.

Despite our enormous respect for the author of the opinion in People v. Henderson, 60 Cal.2d 482, 35 Cal.Rptr. 77, 86, 386 P.2d 677, 686 (1963), we thus cannot agree with Justice Traynor that *Green* "vitiated" the rationale of *Stroud.* Moreover, Cichos v. Indiana, 385 U.S. 76, 87 S.Ct. 271, 17 L.Ed.2d 175 (1966), supports the view that *Stroud* survives *Green.* In *Cichos,* defendant had been tried on a two-count affidavit charging him with involuntary manslaughter and reckless homicide, and the jury returned a verdict reciting only that he was guilty of reckless homicide. Following appeal and reversal, defendant was again tried on both counts, and the second jury returned the same verdict as the first. After the Supreme Court of Indiana affirmed this conviction, certiorari was granted to determine whether the rule in *Green* should be applied to reverse this *state* conviction on the ground that the reprosecution on the involuntary manslaughter count placed defendant in double jeopardy. After full briefing and oral argument the majority of the Court dismissed the writ as improvidently granted on the ground that in Indiana the offenses charged "are statutorily treated more as one offense with different penalties rather than viewing reckless homicide as an included offense in involuntary manslaughter." Thus, although the Court did not mention *Stroud,* it did hold that the fact that the jury had opted for a lower punishment rather than for a lower degree of offense was

sufficient to take the case out of *Green.* In Patton v. North Carolina, supra, the court properly described as a fiction the notion that a sentence for a term less than the maximum is an implied "acquittal" of liability for a greater term, 381 F.2d at 645. Indeed, the *Stroud* case, where the lesser punishment at the previous trial had resulted from action of the jury, would have been a better one for that theory than where, as in *Henderson* or here, the lower sentence was the handiwork of a judge after a verdict silent on the issue of punishment. But, as already indicated, we cannot follow what the distinguished author of *Patton* characterized as an alternate argument based on "a somewhat different aspect of double jeopardy—the prohibition against multiple punishment," in the face of *Stroud's* citation of Ex parte Lange, supra, and the unimpeached authority of Murphy v. Massachusetts.

■ Even if we were not bound by these Supreme Court decisions as we are, our conclusion would be the same. No policy of the double jeopardy clause is offended when, as a consequence of a retrial of the same offense resulting from proceedings taken by the accused to correct trial error, a higher punishment is imposed. He is neither being denied the benefit of a former acquittal, being "vexed" by a second prosecution for the same offense, nor being given a second punishment in a proceeding initiated against his will.

## II.

The idea that some other constitutional principle forbids a heavier sentence on retrial, even if double jeopardy does not, is of exceedingly recent origin. In King v. United States, 69 App.D.C. 10, 98 F.2d 291 (1938) (Edgerton, J.), a judge conspicuous for his devotion to civil rights sustained an increase in the kind of punishment on the authority of *Murphy* and *Stroud.* In Hayes v. United States, 102 U.S.App.D.C. 1, 249 F.2d 516 (1957),

tion that the imposition of a greater punishment had placed the defendant twice

in jeopardy." 355 U.S. at 213, 78 S.Ct. at 237 (dissenting opinion).

cert. denied, 356 U.S. 914, 78 S.Ct. 672, 2 L.Ed.2d 586 (1958), Judge Fahy, writing also for Judges Bazelon and Washington, thought it "clear that, if the sentence were invalid and defendant successfully attacked it, he could be validly resentenced though the resentence increased the punishment." The brief for the petitioner in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), written by Mr. Justice Fortas, while at the bar, sought to still fears of a gaol delivery by noting that a defendant who obtains a reversal may be retried and "it is possible that an even more severe sentence than that originally levied may be imposed at the conclusion of the second trial."[4] Still more recently the Third Circuit denied such a claim in United States ex rel. Starner v. Russell, 378 F.2d 808, cert. denied, 389 U.S. 889, 88 S.Ct. 166, 19 L.Ed.2d 189 (1967). The panel of this court that decided United States v. Ellenbogen, 365 F.2d 982, 989 (1966), cert. denied, 386 U.S. 923, 87 S.Ct. 892, 17 L.Ed.2d 795 (1967), did not discuss the point, see 390 F.2d 537, 543 n. 13 (1968)—the argument having there been cast in terms of double jeopardy rather than of some other constitutional principle or of a standard to be enunciated by a reviewing court with respect to federal sentences.

■ We pause at this point to say that if there were evidence in any case that a judge had exacted increased punishment *because of* the defendant's having prosecuted a successful appeal or other post-conviction remedy, no one could doubt there had been a denial of due process of law. See the examples in American Bar Ass'n, Standards Relating to Post-Conviction Remedies 95–96

(1967). Such conduct, as said by the Third Circuit in *Starner,* supra, would be "unworthy of the name of judge." 378 F.2d at 811. Denial of credit for time already served or "good-time" allowances would be a strong indication of such perversity.[5] It is hard to think of any proper basis for such action; as said by Judge Edgerton in King v. United States, supra, 98 F.2d at 293, the argument that time served under the first sentence must be disregarded because the sentence was void is "in the vein of The Mikado," and such cases have no real bearing on the issue here. Cf. Lewis v. Commonwealth, 329 Mass. 445, 447–448, 108 N.E.2d 922, 923, 35 A.L.R.2d 1277 (1952). But there is no suggestion that anything of the sort happened in this case, and we cannot conceive of its happening with any of the district judges in this circuit. Such point as there is to the argument of improper motivation is that the difficulty of demonstrating this in the rare case where it exists requires a prophylactic rule outlawing increased sentences in any case—a consideration to which we will later return.

■ We pause also to note some types of reasons why a judge may conclude that a higher sentence is required after a retrial. One is that noted by the First Circuit in Marano v. United States, 374 F.2d 583 (1967), namely, where the defendant has engaged in anti-social activities after his first sentence—a situation frequently encountered in narcotics prosecutions but not unknown in others. Another is where the new trial reveals the crime to have been more dastardly or the defendant to have played a much larger role than was first supposed. This may occur for a variety of reasons. One

---

4. P. 44. We cite this not out of any belief that a judge can fairly be held to statements earlier made as an advocate but because the statement in the Fortas brief so correctly reflected notions currently entertained by bench and bar.

5. The court in Patton v. North Carolina, supra, may have been influenced by what it regarded as a pattern to that effect. See 381 F.2d at 639 n. 8, and Note, In-

creased Sentence and Denial of Credit on Retrial Sustained under Traditional Waiver Theory, 1965 Duke L.J. 395, 399 n. 25. In Simpson v. Rice, 396 F.2d 499 (5 Cir. 1968), now before the Supreme Court, the state court on resentence had denied credit for time served under the original sentence, and imposed sentences aggregating 25 years instead of 10.

is where the first conviction was on a plea of guilty, as in United States ex rel Starner v. Russell, supra, 378 F.2d 808, and the judge may have had only a bare outline of the offense.[6] Another instance would be where the defendant takes the stand at the second trial and produces an impression as to guilt contrary to that intended. A third is where evidence previously unavailable to the prosecution shows that the defendant instead of being a minor cog was the mastermind; a judge might well be disinclined to allow such a defendant to escape with a sentence lower than that given to others who were simply his tools. Instances such as these suffice to demonstrate that, despite contrary *ipse dixits*, the state may have an important interest in the imposition of a sentence that appears just in light of the latest and best information.

The origin of the alleged new constitutional right can be assigned, quite definitely, to March 1965, when Professor William W. Van Alstyne published a learned and effective article, In Gideon's Wake: Harsher Penalties and the "Successful" Criminal Appellant, 74 Yale L.J. 606. The "right" matured rapidly; its progenitor, acting as assigned counsel, secured its recognition by the Fourth Circuit in Patton v. North Carolina, supra, only two years after its birth. See also State v. Holmes, 161 N.W.2d 650 (Sup.Ct.Minn.1968).

Apparently sensing the weakness of a claim that a heavier sentence on retrial was unconstitutional simply as violating a "principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental," Snyder v. Massachusetts, 291 U.S. 97, 105, 54 S.Ct. 330, 78 L.Ed. 674 (1934), or running counter to "the concept of ordered liberty," Palko v. Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 82 L.Ed. 288 (1937), Professor Van Alstyne developed an argument based on the doctrine of unconstitutional conditions. The argument starts from the proposition that "[E]njoyment of governmental benefits may not be conditioned upon the waiver or relinquishment of constitutional rights, at least in the absence of compelling societal interests which justify the subordination of such rights under the circumstances," 74 Yale L.J. at 614. We do not find the consequent course of the argument entirely plain. At times, fitting the proposition we have quoted, the article contends that enjoyment of the benefit of "sentence repose" cannot be conditioned upon waiver of the constitutional right to a "fair trial" which is assumed to include an appeal or other post-conviction remedy. At other times the argument seems to be put in reverse: Assertion of the constitutional right to a fair trial through appeal or other post-conviction remedy cannot be conditioned "upon the waiver—express or implied—of the protection against harsher sentencing to which one would be entitled if he did not insist upon that right." 74 Yale L.J. at 615.

■■ One problem with either form of the argument is the repeated statements by the Justices that there is no constitutional right to an appeal even in criminal cases. See Douglas v. California, 372 U.S. 363, 365, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (dissenting opinion); Griffin v. Illinois, 351 U.S. 12, 18, 21 (concurring opinions), 27, 76 S.Ct. 585, 100 L.Ed. 891 (dissenting opinion) (1956); McKane v. Durston, 153 U.S. 684, 687–688, 14 S.Ct. 913, 38 L.Ed. 867 (1894).[7] In this respect the case stands

6. This also was the situation in People v. Henderson, supra, 60 Cal.2d 482, 35 Cal. Rptr. 77, 386 P.2d 677. The revolting details of an exceptionally brutal sex murder, as well as a nauseating sexual attack, with a threat to kill, earlier made by the defendant on another woman, afford ample explanation why the jury decided on the death penalty as against the life imprisonment previously imposed by a judge on a guilty plea.

7. Professor Van Alstyne suggests that "it is arguable, however, that due process of law requires an adequate opportunity for at least one impartial hearing of a claim that one is being held in prison in violation of his constitutional rights,

differently from United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed. 2d 138 (1968), where the Court held unconstitutional so much of the Federal Kidnapping Act, 18 U.S.C. § 1201(a), as subjected a person availing himself of his Sixth Amendment right to a jury trial to the risk of a death penalty not borne by those who pleaded guilty or waived trial by jury. Quite apart from this, however, and taking account of a third possible variation—that the government cannot condition the "benefit" of an appeal or other post-conviction remedy on waiver of the "constitutional right" of sentence repose—the fundamental fallacy is that the argument mistakes the nature of the latter. It is a misuse of language to speak of a "right" of the defendant to the sentence imposed at the first trial. Rather, as shown by the discussion in Ex parte Lange, the opinion in Murphy v. Massachusetts, which Professor Van Alstyne treats only glancingly and *Patton* does not even mention, and the decision in *Stroud,* this is rather an immunity from having a sentence increased *at the instance of the state.* We thus perceive no "unconstitutional condition" in the state's saying that if it does nothing but the defendant sets proceedings for voiding his conviction and sentence in motion, he subjects himself, in the event of reversal and subsequent conviction for the same offense, to what-

ever sentence is justified in light of all the facts then appearing.

■ Rather similar considerations require rejection of the "equal protection" argument developed in an "epilogue" to the Van Alstyne article, 74 Yale L.J. at 636–39, and adopted in *Patton,* 381 F.2d at 641–643. This asserts it is an invidious discrimination for the state to increase sentences only of those who have successfully resorted to an appeal or other post-conviction remedy when there may be equally good reasons for increasing the sentences of those who have not; it is said that "The vulnerable class appears to be quite equivalent to a class described by race, righthandedness, indigence, or some other factor equally irrelevant in any proper determination of those who sentences might appropriately be reviewed," 381 F.2d at 642, quoting the argument of counsel.

■ The language seems quite exaggerated and the asserted analogy false. To the extent that a new trial, had at the instance of the successful appellant, has shed new light on the adequacy of his previous sentence, there is a sufficient basis for a classification allowing an appropriate sentence to be imposed upon him without requiring the state to undertake the enormous burden of periodically reviewing the sentences of all prisoners. More important, the argu-

whether that hearing be supplied by appeal, some other post-conviction remedy within the state, or federal habeas corpus." 74 Yale L.J. at 613–14 n. 25. It is not clear whether this is limited to cases where the initial tribunal is alleged to have been prejudiced or includes something more; in view of our disposition of the case we find it unnecessary to decide the point. On the other hand, if the notion of "fair trial" is a trial consistent with all existing rules of law, we do not see how Professor Van Alstyne's thesis can be restricted to cases of successful assertion of a constitutional claim. See 74 Yale L.J. at 615–16. At the very least, one would suppose, it would have to include any case where a substantial constitutional claim was asserted, even though the reversal was on a claim of

another sort. If so, the limitation would not be of practical importance. Almost all claims of error in criminal trials are now placed in a constitutional mould; the criminal appeal *not* containing a constitutional claim is a rarity. Thus, while Professor Van Alstyne cites erroneous admission of hearsay evidence as an example of a ruling erroneous under state law, such claims are now cast as violations of the Sixth Amendment right of confrontation. Conversely the claim sustained on Coke's first appeal, "that the comments of the trial judge were of such a nature that, in the context in which they were made, they must have improperly prejudiced the defense in the minds of the jurors," would have been treated in former days as trial error rather than as a denial of due process.

ment ignores that where double jeopardy protection is in effect—and this may be everywhere, cf. United States ex rel. Hetenyi v. Wilkins, 348 F.2d 844 (2 Cir. 1965), the state *cannot* increase the sentences of prisoners who do not challenge them, after these have become final. It is not a denial of equal protection for the state to effectuate a proper policy— here of imposing what seems a just sentence in light of all the facts—on those on whom it constitutionally can, simply because there are others on whom it constitutionally cannot. See Matson Nav. Co. v. State Board of Equalization, 297 U.S. 441, 446, 56 S.Ct. 553, 80 L.Ed. 791 (1936). Indeed it could be argued at least as persuasively that a rule prohibiting imposition of the most severe penalty on a murderer like Ronald Kaye Henderson, see fn. 6, in the absence of a constitutional barrier, while capital punishment was imposed on less brutal killers who had not had a lighter sentence set aside at their instance, would violate equal protection as to the latter. Whether the equal protection argument would have force in a case where no reason for the increased sentence was assigned, we need not here decide.

What remains for consideration on the constitutional aspect of the case is the argument, previously noted, that since the inflicting of increased punishment as a penalty for successful attack would be a denial of due process but could only rarely be established, nothing but a universal prohibition will do. A constitutional doctrine should have some stronger underpinning than a fear that judges will be unworthy of their trust. We would require more evidence of abuse than has been proffered before we would decide that, with the very real interest the state may sometimes have in an increased sentence, so drastic a prophylaxis is required.

### III.

Our belief that the Constitution does not mandate a universal prohibition of higher sentences after a retrial for the same offense obtained at the defendant's instance does not mean that the subject should be left completely at large. A federal appellate court has not only the right but, in our view, the duty to lay down standards on this matter for application in federal trials. While sentencing is normally within the discretion of the trial judge, this subject raises issues of general principle such that a uniform practice should be established, compare United States v. Wiley, 278 F.2d 500 (7 Cir. 1960); Thomas v. United States, 368 F.2d 941 (5 Cir. 1966), and the prospect of an increased sentence on retrial is sufficiently threatening to the assertion of defendants' rights that this practice should strictly limit the possibility of such a sentence to cases truly calling for it.

This was the course followed by the First Circuit in Marano v. United States, supra, 374 F.2d 583, a decision that has been cited, we think with dubious correctness, both in United States ex rel. Starner v. Russell, supra, 378 F.2d at 810–811, and Patton v. North Carolina, supra, 381 F.2d at 641, as laying down a *constitutional* doctrine. We are in accord with Chief Judge Aldrich's view that after a retrial at the defendant's instance, the court may permissibly increase a sentence, just as it may reduce one, in light of his conduct since sentence was initially passed. Such conduct affords evidence that the first sentence was not sufficient to serve its purpose of deterrence, and it is no answer that if the subsequent conduct is a crime and there is enough proof to establish it, some government, state or federal, may prosecute.[8] Where we find ourselves in disagreement with the First Circuit is its ruling out new testimony at the second

---

**8.** We assume that in the event of conviction of the second crime, a judge imposing sentence for the crime would take into account any increase in the sentence for the first.

trial as a factor justifying more severe punishment. While it is entirely true that "the danger that the government may succeed in obtaining more damaging evidence on a retrial is just as real as the danger, for example, that the judge on his own may wish to reconsider, unfavorably to the defendant, the factors which led to his original disposition," 374 F.2d at 585, we do not see why the former danger is one against which the defendant is entitled to protection. He knows full well what his participation in the crime was; if the government's inability to establish this at the first trial, often as a result of the defendant's own actions, has resulted in a lighter sentence than the true facts would require, it seems in no way improper that he should have to take this into account in determining whether to appeal.[9] A defendant has no vested right in an inadequate record, at least when the inadequacy results from factors beyond the prosecution's control. We perceive no reason why "there must be repose * * * as to the severity of the crime," 374 F.2d at 585, when it is the defendant who shattered the repose; as to this we agree with the contrary view of the Third Circuit in United States ex rel. Starner v. Russell, supra, 378 F.2d at 811. We hold that in such circumstances a higher sentence may lawfully be imposed, provided that the judge specifies the reasons on the record.[10]

■■■ We regard it as much more doubtful whether a heavier sentence is justified simply because, as here, the second judge went to more pains in investigating defendant's general behavior

prior to the initial sentence than did the first. The Government could have asked Judge Dawson to defer Coke's sentence after the first conviction pending preparation of a pre-sentence report and this could have developed the additional facts, of questionable significance on any view, that led Judge Cooper to increase the sentence.[11] In these situations the important interest that appeals not be deterred outweighs the Government's rather slight interest in an increased sentence because of facts that were or could have been brought before the first judge. These considerations apply *a fortiori* when the higher sentence simply reflects a different philosophy on the part of the second judge. Hence if Coke had raised question as to his sentence on the appeal from his second conviction, we would have been disposed to sustain him.

### IV.

■■■ However, he did not, and we are confronted with the question whether such relief is now available. In United States v. Sobell, 314 F.2d 314, 320–323 (2 Cir.), cert. denied, 374 U.S. 857, 83 S.Ct. 1906, 10 L.Ed.2d 1077 (1963), we attempted to parse 28 U.S.C. § 2255, under which Coke's application was filed, without much result from that endeavor beyond a conclusion that, as held in Hill v. United States, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962), the statute despite its letter does not authorize relief whenever there has been some violation of "laws of the United States." Citing the statement in *Hill* that "the legislation was intended simply to pro-

---

9. Perhaps, as the Government concedes, there should be an exception when the increased punishment decreed at the second trial is the death penalty—the "grisly choice" referred to in Fay v. Noia, 372 U.S. 391, 440, 83 S.Ct. 822, 9 L.Ed. 2d 837 (1963).

10. We thus would not go so far as the majority of the American Bar Association's Advisory Committee on Sentencing and Review, chaired by Judge Sobeloff, although farther than the minority, see Standards Relating to Post-Conviction

Remedies, p. 96. See also the differing views in United States v. White, 382 F. 2d 445 (7 Cir. 1967), cert. denied, 389 U.S. 1052, 88 S.Ct. 796, 19 L.Ed.2d 846 (1968).

11. The Government does not contend that the evidence of Coke's participation in the crime at the third trial was any different than at the second, or that the pre-sentence report showed continued anti-social activity. In fact Coke seems to have been in jail from the date of his first sentence.

vide in the sentencing court a remedy exactly commensurate with that which had previously been available by habeas corpus in the court of the district where the prisoner was confined," 368 U.S. at 427, 82 S.Ct. at 471, we examined the rule in habeas corpus cases, notably Sunal v. Large, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947), and concluded that the maximum scope of § 2255 was to allow relief to a prisoner "if he has shown (1) a significant denial of a constitutional right, even though he could have raised the point on appeal and there was no sufficient reason for not doing so * * *; or (2) a defect seriously affecting his trial, even though not of constitutional magnitude, if it was not correctible on appeal or there were 'exceptional circumstances' excusing the failure to appeal." 314 F.2d at 322–323. We have concluded that Coke's case does not come within (1). As to (2), the error would have been correctible on appeal, see United States v. Wiley, supra, 278 F.2d 500; Thomas v. United States, supra, 368 F.2d 941, and we do not think there were "exceptional circumstances" excusing the failure to raise the point on the appeal argued in June 1966. Coke had just as much opportunity to argue the point in this court as Marano did in the First Circuit some nine months later.[12] Professor Van Alstyne's article, the most powerful argument on the subject, had appeared over a year before. His counsel on this appeal contends that even under § 2255 a more lenient view should be taken when the issue relates only to sentence where

a ministerial act will accomplish the needed correction, than where sustaining the point would require a new trial. But Coke's case does not present an isolated individual problem, as in United States v. Lewis, 392 F.2d 440 (4 Cir. 1968), and cases there cited, and application of the rule we here prescribe in a proceeding in the nature of habeas corpus[13] would create a real danger, as the Government argues, that "Any defendant who has failed to appeal a conviction could conceivably file an application for relief under Section 2255 based on the allegation that he failed to exercise his right to appeal because he feared the imposition of a higher sentence on retrial" which our rule would prohibit. Although, as indicated in United States v. Jackson, supra, 390 U.S. at 583 n. 25, 88 S.Ct. 1209, such an assertion would not have to be accepted but must be proved, the burden on the courts—and the difficulty of successful challenge to such a claim—would be substantial.

The situation is different, however, if we regard the proceeding for correction of sentence as one under F.R. Cr.P. 35. Although Coke's application was labelled as under 28 U.S.C. § 2255, Judge Cooper, with the liberality proper in dealing with *pro se* motions, treated it alternatively as a motion under Rule 35. Cf. Heflin v. United States, 358 U.S. 415, 418, 422, 79 S.Ct. 451, 3 L.Ed. 2d 407 (1959); Hill v. United States, supra, 368 U.S. at 430, 82 S.Ct. 468 (1962). The Rule provides in pertinent part: "The court may correct an

---

12. Coke could not have been deterred by United States v. Ellenbogen, supra, 365 F.2d 982, 989, since that case was not decided until September 1966.

13. While, in cases decided on appeal, the Supreme Court has felt it possible to give the particular appellant the benefit of new rules of criminal procedure designed generally for prospective applications, it apparently considers that when it has laid down a new doctrine on collateral attack, uniform retroactive application is demanded, see, e.g., Doughty v. Maxwell, 376 U.S. 202, 84 S.Ct. 702,

11 L.Ed.2d 650 (1964), and hence a successful appellant in habeas corpus cannot be allowed to profit from a new prospective rule. This is well illustrated by the rulings in the identification trilogy, where the Court gave the benefit of its new prospective rule to Wade and Gilbert, whose cases were before it on appeal, United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), but not to Stovall, whose case was in habeas corpus, Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

illegal sentence at any time \* \* \*.'' The "narrow function" of that portion of the Rule "is to permit correction at any time of an illegal *sentence,* not to reexamine errors occurring at the trial or other proceedings prior to the imposition of sentence." Hill v. United States, 368 U.S. at 430, 82 S.Ct. at 472. Even so, Coke's increased sentence would be "illegal" under the rule we here lay down, in the sense that it would violate a standard enunciated under our power to supervise the administration of federal justice.

We assume nevertheless that we could frame the rule solely for application to future sentences. There would be some appropriateness in doing so since a principal purpose is to avoid the deterrence of appeals and past appellants were manifestly not deterred. Against this is the seeming unfairness of denying the fruits of victory to him who bore the heat of the battle and the larger unfairness of different treatment of persons whose only dissimilarity is the date of their sentence when correction can be so easily afforded. We do not think the burden of applying the new standard to all federal defendants who after successful appeal were convicted and given a longer sentence would be substantial.[14] In the year ended June 30, 1967, we reversed only 12 criminal convictions, see 90th Cong.2d Sess., Sen.Rep. 1175, Table I, p. 18, a figure we would not suppose to have been much exceeded in prior years. The number of cases in which a higher sentence was imposed after conviction on retrial that may require reexamination must thus be exceedingly small.

The Court expresses its appreciation to Robert D. Kamenshine, Esq., of the Vanderbilt University School of Law, for a learned and effective presentation on Coke's behalf.

The judgment is reversed with directions to reduce Coke's sentence to that imposed after his prior conviction.

LUMBARD, Chief Judge (concurring):

The purpose of the new rules announced today by the court is to guard against the possibility that the second judge, in imposing a more severe sentence, might to some degree be doing so to penalize the defendant for having exercised his right to appeal, and, in any event, to guard against the appearance of such a penalty as it might deter others from exercising their right to appeal.

I am in full agreement with the need for a rule which will prevent the imposition of any more severe sentence after retrial unless there is an affirmative showing that the sentence reflects conduct by the defendant occurring subsequent to the first sentencing or facts which were unknown to the first sentencing judge because of some action chargeable to the defendant. This leaves the second trial judge with some discretion. To this extent I would advocate the modification of the proposals of the Advisory Committee on Sentence and Review of the American Bar Association, adopted by the House of Delegates, in August, 1968. See fn. 10 of majority opinion.

While I agree with what Judge Moore says in his dissenting opinion about the desirability of adopting more complete standards after a suitable period of study, I see no need to delay here. The American Bar Association Standards have been promulgated and approved. By today's decision we merely give effect to a suitable modification of such standards along the lines which Judge Moore himself seems to favor.

I also concur with the holding that the rule should be given retroactive application, since this can be done without serious disruption in the administration of justice. Cf. Mirra v. United States, 402 F.2d 888, 2d Cir., November 1, 1968. Of course, before the disposition of any subsequent motions under Rule 35 seeking a retroactive application of today's

---

14. As to sentences prior to the date of this opinion, our requirement of specification of reasons on the record at the time of sentence should be inapplicable.

decision the second sentencing judge should be given the opportunity to make a record of his reasons for the more severe sentence if he did not do so at the time he imposed the sentence. This, I take it, is the import of footnote 14 of the majority opinion.

It should also be noted that the American Bar Association, by action of its House of Delegates in February, 1968,[1] approved proposed standards for Appellate Review of Sentences [2] which would give appellate courts the power to increase or decrease sentences. The adoption of such a measure by Congress naturally would empower a court of appeals to pass upon a second sentence imposed in circumstances similar to those confronting us in this case.

\* \* \*

Circuit Judge IRVING R. KAUFMAN concurs in Chief Judge LUMBARD'S separate opinion as well as in Circuit Judge FRIENDLY'S opinion.

MOORE, Circuit Judge (dissenting):

Some background of the relevant facts is usually desirable in passing on the legal issues. To supplement this deficiency in the majority opinion, a more complete factual statement is required.

*The Trial before Judge Dawson*

After the defendant Coke had been found guilty of narcotics violations by the jury, Judge Dawson said: "For sentence, do you want the sentence now or later?" To which counsel replied: "The defendant says he has no reason if the Court decides it should be now." Thus, Judge Dawson did not have a pre-sentence probation report.

Thereupon, the Government disclosed a Cuban criminal record involving narcotics and "about five theft charges in Cuba." Defendant's counsel urged leniency because Coke, although never

married, had "an obligation as to a three-year-old child."

Judge Dawson, believing that "The narcotic traffic in New York is a very bad situation," which "must be stamped out," and which "Congress a few years ago decided \* \* \* was so serious that they took it [sic] away from the judges the power to suspend sentence or give reduced sentences," sentenced Coke to six years in jail.

*The Trial before Judge Cooper*

The conviction before Judge Dawson was reversed solely because of appellate belief that disparaging remarks and prejudicial conduct of the trial judge had deprived Coke of a fair trial. United States v. Coke, 339 F.2d 183, 185 (2 Cir.). On retrial, the jury again convicted. Before imposing sentence, Judge Cooper had "read and reread the pre-sentence investigation" and had "given it a great deal of thought." On sentence, addressing Coke, he found "in it [the pre-sentence report] hardly anything, Coke, on the creditable side of the ledger of your life. You have been shiftless, indifferent to responsibilities, you have fathered children by three different women. Most of those children, if not all of them, have been on welfare for years. \* \* \* I am overwhelmingly convinced that you have been a large supplier of cocaine in the New York City area. \* \* \*." In imposing sentence, Judge Cooper said: "I find myself hard put to come to an agreement that the sentence that Judge Dawson meted out was or would be today the appropriate sentence \* \* \*." Consecutive terms of five years were ordered on counts 1 and 2, and a five-year concurrent term as to count 3.

This court affirmed the conviction. 364 F.2d 484. No claim was made in that appeal that the ten-year sentence infringed Coke's rights, constitutional or otherwise. Even on the motion to reduce

1. ABA, Summary of Action House of Delegates, February 19–20, 1968, p. 6.

2. ABA Advisory Comm. on Sentencing and Review, Standards Relating to Appellate Review of Sentences, Pt. III, §§

3.1–3.3 (Tentative Draft, April, 1967), as amended, ABA Special Comm. on Minimum Standards for the Administration of Justice, Proposed Revisions of Standards Relating to Appellate Review of Sentences (1967).

sentence, Coke did not assert the present claim, which is now raised by a section 2255 petition to correct or reduce the sentence.

The basis and rationale for the ten-year sentence are clearly disclosed in the opinion denying the reduction. Coke v. United States, 280 F.Supp. 97 (D.C. 1968.)

1. As to penalizing the petitioner for exercising his right to appeal, Judge Cooper said: "The thought itself is repugnant. Such is not the quality of justice prevailing here."

2. Probation report. Judge Cooper said after studying it: "Its revelations, the nature of the offense committed, the events occurring at the third trial, including petitioner's deportment there, the necessity for a deterrent, and an estimate of his dangerousness to the community at large" were considered. "The pre-sentence report after the third trial revealed more" including three non-supported children by three different paramours and "a peddler [narcotics] of high danger to the community."

Judge Cooper believed that "sentencing judges should not hesitate to affirmatively place on the record the basis of their action." He did so and concluded that "Where the new or additional information relates to a significant aspect of defendant's life habits and conduct, affecting his potential danger to society, his capacity to live within its legal norms, a change in form (e. g., from probation to imprisonment) or increase of sentence (e. g., from six to ten years) is warranted."

### The Van Alstyne Law

The current interest in the thesis that on a re-trial of the same case no sentence shall be imposed which is of greater duration than the original sentence apparently stems from a law review article in March 1965 by Professor Van Alstyne entitled, "In Gideon's Wake: Harsher Penalties and the 'Successful' Criminal Appellant," 74 Yale L.J. 606. Professor Van Alstyne concedes that "Harsher sentences following re-conviction of successful appellants are permissible throughout the federal courts [14] and in the vast majority of the States.[15]" Confronted with existing law, he sets out to change it by having "the burden of this article" establish that harsher sentences are unconstitutional and asserts that three constitutional provisions or principles centering around double jeopardy and equal protection support this conclusion. Underlying the entire argument is the assumption that fear of an increased sentence is a deterrent to convicted defendants from pressing an appeal. The author recognizes that some authoritative support may be required to make effective his new law because he says, "Hopefully the States will remedy the situation of their own accord by appropriate legislative or judicial action [45]". (Id. p. 624), thus heeding the modern trend of giving separate but equal powers to both divisions of Government under the court-interpreted Constitution with the judiciary ever ready and willing to assume (possibly even usurp) primary legislative functions.

With the background and authority of this treatise, the next step was to take it into the forum for a practical test run.

Opportunity was quickly presented in the person of Eddie Patton who, in North Carolina, had pleaded *nolo contendere* to armed robbery and had received a twenty-year sentence. *Gideon* had afforded Patton a new trial. On the retrial, an increased sentence for all practical purposes was imposed, namely, twenty years without allowance of the four-years-plus already served. A habeas corpus proceeding was brought in the federal court, Patton being represented by Professor Van Alstyne. The court believed that "the heart of the question" was to be found in the suspicion that (1) the second judge was penalizing the defendant for his temerity in seeking to vindicate his rights by appealing, and (2) "would he [the judge] likely be candid enough to so state in the record." Patton v. North Carolina, 256 F.Supp. 225, 234 (D.C.). Because of

the difficulties "of proving improper trial judge motivation," the court, in effect, absent justifying proof presented by the State showing facts which rationally supported the imposition of a heavier sentence such as misleading the first trial judge as to the defendant's prior criminal record or possibly intervening facts, concluded that there was not a "scintilla of evidence in the record to rationally support the imposition of a harsher penalty * * *." Id. p. 236. On appeal, Professor Van Alstyne as court-assigned counsel represented Patton. Judge (now Chief Judge) Sobeloff, adopting the Van Alstyne thesis, concluded that since it is "impossible, and most distasteful, for federal courts to pry into the sentencing judge's motivation to ascertain whether vindictiveness played a part" and because "improper motivation is characteristically a force of low visibility," "In order to prevent abuses, the fixed policy must necessarily be that the new sentence shall not exceed the old." Id. p. 641. At this point, I must note by disagreement, as I believe my majority colleagues disagree, with the statement in *Patton* of avoiding a danger that "the added punishment was in reaction to the defendant's temerity in attacking the original conviction." Id. p. 641. I will not impute any such motivation to Judge Cooper (or to any other trial judge in this Circuit) who has meticulously spread on the record sound factual reasons for his action.)

Additional support for the Van Alstyne thesis is to be found in the tentative drafts of the Advisory Committee on Sentencing and Review (American Bar Association Project on Minimum Standards for Criminal Justice). This Committee serves within the framework of the Special Committee of which Chief Judge Lumbard is the Chairman and which Committee "is responsible for the overall supervision and coordination of the Project." "The Special Committee will eventually recommend the standards to those Sections, and to the Board of Governors and the House of Delegates for their consideration and endorsement." (Preface, Tentative Draft, April 1967). Chief Judge Sobeloff, the writer of the Patton opinion, is the Chairman of the Advisory Committee on Sentencing and Review. 8,000 copies of the report of his committee were to be distributed and "Through this procedure [and after "wide and careful consideration"], it is hoped to achieve the formulation of standards which can be recommended for application throughout the United States." It is not surprising in view of this background to find Professor Van Alstyne's views featured as a basis for the Committee's proposal that "On a remand for the purpose of resentencing an offender, no sentencing court should be empowered to impose a sentence which results in an increase over the sentence originally imposed." (3.4(b), Tentative Draft).

A thorough review of the laws of many of the States on the subject is to be found in the appendix to the Draft. Some States permit an increase, some do not. As might have been expected, the views of the Committee were not unanimous. Equally to be expected may be lack of unanimity in the Board of Governors, the House of Delegates, the Judicial Conference, the Congress, or the Supreme Court.

Pragmatically, it will make little difference as to what law is enacted on the subject; but in my opinion it makes a great deal of difference as to how it is enacted. Particularly is it important in this situation because in this field, unlike so many others, it should be possible to draft a law for definite application on a national basis, that is, if acceptable to the States—or possibly even if not.

Before dealing with the future, a glance at the present may be helpful. Our system now calls for sentencing by a judge. Under this procedure this duty is his "prerogative" and the sentence is on his "conscience." Some courts have sentencing panels in which the sentence to be imposed is discussed. Some judges heed, and are influenced by, the discussion; others do as they

please. This system promotes gross inequalities, creates injustices and fosters judge-shopping. In every district any trial lawyer knows the maneuvers necessary to be taken to get the "right" judge. Of necessity judges possess their own individual characteristics and predilections. They quickly reveal to the Bar the types of crime on which they are "hard" and those on which they are "soft." Disparities of sentence must continue to exist as long as judges continue to be human beings.

The current decisions [1] indicate the problems for the future draftsmen. Should sentence be imposed only after a probation report? Should the sentencing judge have to state on the record his reasons for the particular sentence? Should his reasons be subject to collateral attack and appellate review? Where there is a re-trial, should the second sentencing judge be deprived of his "prerogative" and his "conscience"? Can he consider intervening events such as here? Should he state on the record, again for collateral attack and review, those reasons which impel him to increase the sentence? Should appellate courts through appellate review be the sentencing body? (An interesting situation might be revealed in the imposition of a 20-year sentence by a vote of 5 to 4, 5 voting for 20 years, 4 for 5 years—a highly supposititious case. Would not the fairer sentence result from a division by 9 of the total years or a sentence of 13 years and 4 months?)

Doubtless many other questions can be conjured up but one certainty exists—a law can be enacted which will give to all judges some idea as to the procedure to be followed by them on re-trial sentencing. Equally certain will be the confusion and comparative injustice which will result from developing the law by the decisional process in a piecemeal manner.

### The Majority Opinion

The majority opinion effectively and convincingly demonstrates that "No policy of the double jeopardy clause is offended when, as a consequence of a retrial of the same offense resulting from proceedings taken by the accused to correct trial error, a higher punishment is imposed."

Accurate, too, is the opinion's statement that "The idea that some other constitutional principle forbids a heavier sentence on retrial, even if double jeopardy does not, is of exceedingly recent origin." Indeed it is.

Again, the opinion correctly concludes that there are no constitutional conditions which prevent the imposition upon subsequent conviction of "whatever sentence is justified in the light of all the facts then appearing" and that "To the extent that a new trial, * * * has shed new light on the adequacy of his previous sentence, there is sufficient basis for a classification allowing an appropriate sentence to be imposed * * *." Nor does the "equal protection" clause bar such a sentence.

However, after presenting sound arguments for its conclusion that "the Constitution does not mandate a universal prohibition of higher sentences after a retrial" and after conceding that "sentencing is normally within the discretion of the trial judge," the majority suddenly change their role and take unto themselves powers which, in my opinion, should be exercised either by the Congress, the Judicial Conference, the American Bar Association upon the recommendations of its appropriate committees now considering the problem, or the Supreme Court. Instead they decree that "A federal appellate court has not only the right but, in our view, the duty to lay down standards on this matter for

1. Marano v. United States, 374 F.2d 583 (1st Cir. 1967); Patton v. North Carolina, 256 F.Supp. 225 (W.D.N.C.1966), aff'd, 381 F.2d 636 (4th Cir. 1967), cert. denied, 390 U.S. 905, 88 S.Ct. 818, 19 L.Ed.2d 871 (1968); United States v. White, 382 F.2d 445 (7th Cir. 1967); United States ex rel. Starner v. Russell, 378 F.2d 808 (3d Cir.), cert. denied, 389 U.S. 889, 88 S.Ct. 166, 19 L.Ed.2d 189 (1967).

application in federal trials." They recognize that "sentencing is normally within the discretion of the trial judge" and believe (as do I) that "a uniform practice should be established"; but then they, in effect, enact a law that reads that on re-trial no higher sentence may be imposed except that in "[two] circumstances [apparently, intervening conduct and development of additional facts on re-trial] a higher sentence may lawfully be imposed, provided that the judge specifies the reasons on the record."

I am not unmindful of recent decisions, May v. Peyton, 398 F.2d 476 (4th Cir., June 26, 1968); State v. Holmes, 161 N.W.2d 650, Minnesota Supreme Court, September 6, 1968; and of the Supreme Court's granting of certiorari in North Carolina v. Pearce, 393 U.S. 922, 89 S. Ct. 258, 21 L.Ed.2d 258, October 29, 1968, and in Simpson v. Rice, 393 U.S. 932, 89 S.Ct. 292, 21 L.Ed.2d 268, November 13, 1968, all of which involve the resentencing problem. However, these decisions for the present are mere stepping stones. In alignment on the starting line of this race to enact a (or the) law on the subject are the highest court of a State, a federal Court of Appeals, the Supreme Court, the American Bar's Special Committee and, unless intentionally scratched, the Congress and the State legislative bodies. It is far easier to pick the losers than the winners in this race. My only concern at this time is with my colleagues' feeling of compunction that they should "lay down standards * * * for application in federal trials." They would, in effect, undertake to do in one decision that to which many of the best legal minds in the country have been devoting their attention for years. Orderly procedure requires in the immediate future the steps outlined in the Committee's Preface. In this hypothetical race, I would not have the courts try to cut in ahead of the Committee and put it out of the race.

I would also pay some respect to State legislative bodies and to State courts. After all, the Constitution, now used so frequently to justify the assertion of federal supremacy, came into being as a result of the original Constitutional Convention only after spirited debates and compromise on the limitation of federal powers and the reservation of States' rights. The peoples of our fifty States are not aborigines, resident in not-yet-emerged areas. They should be entitled to pass laws to express their own public policies. If every man in every State is entitled to his own vote, this vote should not be nullified by some federal judge who, or by a court which, may happen to disagree with the State's public policy. Thus, each State should have the right to enact its own criminal code and to fix the penalties for infractions of its laws. There may be substantial variations in the crimes proscribed and in the penalties attaching thereto. These variations, however, can only be avoided by a uniform criminal code, voluntarily (as in the case of the Uniform Commercial Code) adopted by the States, or foisted and forced upon them by the federal courts under the guise of "equal protection."

The democratic process depends not only upon freedom of expression by the people but, more importantly, upon respect for the actions taken by them. When, as and if a uniform sentencing code is presented to them, they should have the right to accept or reject it without fear that rejection would be overridden rough shod by the federal courts.

In view of the present status of the Committee drafts and the prospects for possible adoption after full and free discussion, I would refrain from doing by decision that which they seek to do by code. I believe that restraint is the essence of democracy and that exercise of restraint at this juncture would be advisable. Nor is there any good reason for allowing the first sentencing judge to follow his "conscience" and for depriving the second sentencing judge of following his "conscience." Both judges have taken the same constitutional oath; each fills his respective niche in our judicial system. Because of action probably to be taken in the compara-

tively near future by the winner of this hypothetical race, my views here expressed will doubtless be academic but for the present I find Judge Cooper's decision consistent with the better law as it relates to re-sentencing. In fact, Judge Cooper was entitled to rely on our decisions in the much-appealed *Ellenbogen* case (United States v. Ellenbogen, 341 F.2d 893, 2 Cir., 1965; Id. 365 F.2d 982 (1966); Id. 390 F.2d 537 (1968) footnote 13 at p. 543). Although this court disposed of the latest appeal on jurisdictional grounds and expressed no opinion as to the merits of other grounds raised, the Court did say by way of footnote with respect to the suggested illegality of a greater sentence on retrial:

> "Ellenbogen argues that his sentence of one year and one day is illegal because it is greater than the sentence of 60 days imposed after his first trial and conviction. He raised this same argument on his second appeal to this court in 1966 and we disposed of it then, along with numerous other points he had raised, in the final sentence of the opinion. United States v. Ellenbogen, 365 F.2d 982, 989 (2 Cir. 1966)."

Lastly, any change in the law should operate prospectively and not retroactively. If the Committee's recommendations (whatever they may be after the "wide and careful consideration" contemplated) are codified by the Congress or Judicial Conference or made into law by the Supreme Court, it would not be presumptuous to predict that they would apply only to situations which may arise after their enactment.

However, assuming that the majority is creating new law for this circuit, I find that Judge Cooper's decision complies with it in every particular. The "two circumstances" both are present, intervening conduct and additional facts upon re-trial. The "provided that" condition has also been met as the Judge "specifie[d] the [his] reasons on the record." In my opinion, therefore, the conclusion is inevitable that his sentence should be upheld and the judgment should be affirmed.