UNITED STATES of America, Appellee,

v.

Julian M. ATEHORTVA, Defendant,

Alejandro Correa, Defendant–Appellant.

No. 1485, Docket 94–1537.

United States Court of Appeals,
Second Circuit.

Argued May 17, 1995.

Decided Nov. 1, 1995.

Christine E. Yaris, New York City for Defendant–Appellant Alejandro Correa.

Eugene Cerruti, Special Assistant United States Attorney, Brooklyn, NY (Zachary W. Carter, United States Attorney for the Eastern District of New York, Geoffrey S. Mearns, Assistant United States Attorney), for Appellee.

Before ALTIMARI, MAHONEY, and WALKER, Circuit Judges.

WALKER, Circuit Judge:

Defendant-appellant Alejandro Correa appeals from the sentence imposed on him by the United States District Court for the Eastern District of New York (Raymond J. Dearie, *District Judge* ) following remand for resentencing after we vacated two of the three counts of conviction against him. In resentencing Correa, the district court departed upward on the remaining count. Correa challenges this upward departure as based on grounds that were not considered at the first sentencing and therefore in violation of his rights to due process and to be free from double jeopardy. He further claims that the sentence is invalid because it is unreasonable and violates the law of the case. We affirm.

## BACKGROUND

The facts of this case are set forth in detail in *United States v. Atehortva,* 17 F.3d 546 (2d Cir.1994), familiarity with which is presumed. We summarize only those facts relevant to this appeal.

All of the charges for which Correa was originally convicted centered around a kidnapping conspiracy to recover unpaid drug debts. At trial, the government relied primarily on the testimony of Alexander Guzman, an accomplice witness who was directly in charge of the kidnapping. Guzman testified that in the fall of 1990, he agreed to help Julian Atehortva collect a $150,000 debt from

Steve Zackson and Peter Lagatta, who had failed to pay for a delivery of five kilograms of cocaine. When Zackson failed to pay off the debt after two meetings with Guzman and Atehortva, Guzman agreed to assist Atehortva in kidnapping Zackson to collect the debt as ransom. According to Guzman, El Tuso, a neighbor whom Atehortva asked to kidnap Zackson, told them cryptically about a good friend who "was very good for this type of thing." El Tuso was referring to Correa, who ultimately joined in the kidnapping.

In December of 1990, Guzman, El Tuso, and Correa kidnapped Lagatta at gunpoint and held him in a house in Queens, where he was told he would be kept until ransom money was paid. Correa and El Tuso remained with Lagatta while Guzman and Atehortva demanded $200,000 in ransom from Zackson. The next day El Tuso ended his role in the kidnapping.

Three days after Lagatta's abduction, Zackson still had not come up with the money. Eventually, Zackson agreed to meet Atehortva and Guzman to deliver $50,000 and the deed to Lagatta's house for Atehortva to hold as security until the balance of the ransom was paid. The kidnappers were unaware that many of Zackson's conversations with them had been taped. At the designated meeting point, when Zackson went to the trunk of his car purportedly to retrieve the money and deed, federal agents arrested Guzman. Atehortva escaped in his car.

Guzman agreed to cooperate and took the agents to the house where Lagatta was being held. Atehortva's car was parked outside. The agents saw Atehortva leave the house and enter his car. Soon thereafter Lagatta and Correa emerged from the house and walked toward Atehortva's car. At this point, shots were exchanged between the agents and Correa. A car driven by a federal agent then struck Correa to prevent him from shooting another agent at close range. Correa was arrested.

Correa was indicted for conspiring to possess and distribute cocaine (count one), 21 U.S.C. §§ 846, 841(b)(1)(A), on the theory that the kidnapping was "intended to further his co-conspirators' ability to sell cocaine." Atehortva, 17 F.3d at 549. He was also indicted for impeding federal agents in the performance of their official duties (count two), 18 U.S.C. §§ 111(a)(1) & (b), and for using a firearm during a drug-trafficking crime (count three), 18 U.S.C. § 924(c)(1). The jury found Correa guilty on all three counts.

Judge Dearie sentenced Correa to 295 months imprisonment. For count one, the district court enhanced the base offense level of thirty-two by two levels for obstruction of justice. U.S.S.G. § 3C1.2.[1] The district court also departed upward an additional two levels because "a higher degree of culpability" than recklessness was involved, § 3C1.2, Application Note 2, resulting in a sentence of 235 months for count one. The court then grouped count two with count one, § 3D1.2(c), and, pursuant to the mandate of § 5G1.2(b), imposed the statutory maximum of 120 months for count two to run concurrently with the 235–month sentence for count one. Finally, Correa received the mandatory, consecutive sixty-month sentence for count three, resulting in a total sentence of 295 months.

On appeal, we vacated the convictions for counts one (drug conspiracy) and three (use of a firearm in relation to a drug-trafficking crime). While we easily found the evidence sufficient to prove that Correa "knowingly participated in a kidnapping," we concluded that the evidence was insufficient "to allow a jury rationally to conclude that [he] knew of the existence of the [cocaine conspiracy] and knowingly joined and participated in it." Atehortva, 17 F.3d at 552 (quotation omitted). Because Correa did not challenge his conviction under count two, we remanded with instructions to dismiss only counts one and three and to resentence accordingly.

At the resentencing hearing, the government argued for an upward departure for count two on the basis that 1) the "guideline range does not adequately account for Correa's participation in an armed, drug-related kidnapping" and 2) it "does not adequately

1. All section numbers refer to the United States Sentencing Guidelines unless otherwise noted.

reflect the severity of the assault, in that Correa fired at the agents at close range and would have done so again if he had not been incapacitated by another law enforcement officer." Without any departure, the sentencing range for count two would have been thirty-three to forty-one months based on § 2A2.2(a), a five-level enhancement for discharge of a firearm under § 2A2.2(b)(2)(A)), and a criminal history category of I.

Judge Dearie departed from the guidelines range and resentenced Correa at the statutory maximum of 120 months. He noted that he was neither considering new information nor increasing the sentence, but simply "considering the same compelling facts that warranted the departure in the first instance, the original sentence." Moreover, he added, he was "not in essence changing the sentence, beyond the substantial reduction mandated by the Court of Appeals." Correa appeals from this sentence.

## DISCUSSION

■ Correa challenges the new sentence on the basis that the district court based the upward departure on factors it did not consider in setting the initial sentence. Specifically, Correa contends that this upward departure 1) violated his rights to due process, 2) subjected him to double jeopardy, 3) was prohibited by the law of the case, and 4) was plainly unreasonable.

The bulk of Correa's appeal rests on the doctrine articulated in *North Carolina v. Pearce*, 395 U.S. 711, 725–26, 89 S.Ct. 2072, 2080–81, 23 L.Ed.2d 656 (1968). *Pearce* prohibits increased sentences upon reconviction, except under certain circumstances, based on a concern that the increase will be motivated, or perceived as motivated, by vindictiveness against the defendant for having successfully appealed.

In *Pearce*, the Supreme Court found that a defendant's due process rights were violated because a harsher sentence was imposed after he succeeded on appeal. Due process, the Court observed, "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial, ... [and] that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." *Id.* at 725, 89 S.Ct. at 2080. The Court reasoned that higher sentences were constitutionally valid only if entered into "in the light of events subsequent to the first trial that may have thrown new light upon the defendant's life, health, habits, conduct, and mental and moral propensities." *Id.* at 723, 89 S.Ct. at 2079 (quotations omitted). To ensure that vindictive motives play no part in resentencing, the Court required that a court imposing a heavier sentence on reconviction present objective reasons concerning "identifiable conduct on the part of the defendant" that occurred after the original sentencing. *Id.* at 726, 89 S.Ct. at 2081.

■ The Court has narrowed the scope of the *Pearce* doctrine over the years to emphasize that the goal is to prevent the " 'evil' " of " 'vindictiveness of a sentencing judge,' " and not simply " 'enlarged sentences after a new trial.' " *Alabama v. Smith*, 490 U.S. 794, 799, 109 S.Ct. 2201, 2204, 104 L.Ed.2d 865 (1989) (quoting *Texas v. McCullough*, 475 U.S. 134, 138, 106 S.Ct. 976, 978, 89 L.Ed.2d 104 (1986)); *see also Wasman v. United States*, 468 U.S. 559, 569–70, 104 S.Ct. 3217, 3223, 82 L.Ed.2d 424 (1984) (finding that harsher sentences following reconviction are prohibited only if actually motivated by vindictiveness against defendant for challenging his conviction). Thus, there is no presumption of vindictiveness if the greater sentence 1) is based on new evidence at retrial, *McCullough*, 475 U.S. 134, 106 S.Ct. 976, 89 L.Ed.2d 104; 2) is determined by a different jury, *Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973); 3) follows a trial de novo, *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972); 4) follows a trial when the first sentence was imposed after a guilty plea, *Alabama*, 490 U.S. at 803, 109 S.Ct. at 2206; or 5) is imposed by a different sentencing judge, *United States v. Perez*, 904 F.2d 142 (2d Cir.), *cert. denied*, 498 U.S. 905, 111 S.Ct. 270, 112 L.Ed.2d 226 (1990). In these cases, the burden lies with the defendant to demonstrate that the resentence was the result of vindictiveness. *Alabama*, 490 U.S. at 799–800, 109 S.Ct. at 2204–05.

■ In *United States v. Coke,* we held, in the wake of *Pearce,* that because "the prospect of an increased sentence on retrial is sufficiently threatening to the assertion of defendants' rights," increased sentences should be strictly limited "to cases truly calling for [them]." 404 F.2d 836, 845 (2d Cir. 1968) (in banc). We based our holding not on constitutional grounds, but on our supervisory powers. *Id.* Such limited circumstances include when the defendant engages in anti-social conduct following the initial sentence or when the defendant's criminal activities are shown to be more offensive at the second trial than was thought at the time of the first sentencing. *Id.* at 842–43. We narrowed the latter exception, however, by stating that when two different judges are involved in the sentencing, if "the second judge went to more pains in investigating defendant's general behavior [occurring] prior to the initial sentence than did the first," it is "much more doubtful whether a heavier sentence is justified." *Id.* at 846. Under *Pearce, Coke,* and their progeny, then, when the same judge imposes a higher sentence based only on consideration of factors present prior to the first sentence, vindictiveness may be presumed.

Correa recognizes that the case before us "presents a variant on the traditional *Pearce* and *Coke* arguments" both because our previous dismissal of counts one and three "necessarily resulted in a sentence which is lower than that which Mr. Correa received when he was first sentenced" and because of the sentencing restrictions imposed on the district court pursuant to § 5G1.2, which required the court to impose the statutory maximum for count two at the original sentencing. Correa nevertheless argues that because the new sentence was based entirely on information available at the first sentence, one could infer that "the efforts by both the government and the district court to restore as much of the prior sentence as possible were the product of vindictiveness, or at least appear to be the product of vindictiveness." Consequently, he contends that *Pearce* and *Coke* apply because they express the goal of preventing actual vindictiveness and a reasonable apprehension of vindictiveness

against a defendant for challenging his first conviction. We disagree.

The most compelling factor in our decision is the fact that the actual sentence for count two was not altered in the slightest, notwithstanding the upward departure. In *Knapp v. Leonardo,* a habeas petitioner had initially been convicted of murder in the second degree, a class A–I felony under New York law, and sentenced to twenty-five years to life. 46 F.3d 170, 180 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2566, 132 L.Ed.2d 818 (1995). After the New York Court of Appeals reversed the conviction and remanded for retrial, *id.* at 174, the defendant was charged and convicted of a lesser offense—manslaughter in the second degree, a class C felony, which carries a fixed sentence of no more than fifteen years, *id.* at 180. At resentencing, the trial court found the defendant to be a persistent felony offender and, pursuant to N.Y. Penal Law § 70.10, imposed a Class A–I felony sentence of twenty-five years to life.

Petitioner claimed that sentencing him as a persistent felony offender "resulted in a vindictive penalty for exercising his right to appeal." *Id.* We affirmed the district court's rejection of this argument primarily because the sentence was "identical, not harsher." *Id.* Likewise, Correa's sentences on count two before and after appeal are identical. In addition, Correa's total sentence of imprisonment was reduced from 295 months at the first sentencing to 120 months at the second.

Correa argues, though, that because the upward departure for count two was based only on evidence that was available at the first sentencing, but not considered at that time by the district court, we should presume vindictiveness and apply the logic of *Coke* and *Pearce,* even if the sentence was not actually increased. We disagree for several reasons.

First, we do not fault the government or the district court for not articulating grounds for departure on count two prior to the original sentencing. At that time, there was no reason to consider grounds for departure for count two; the sentence was already automatically set at the statutory maximum be-

cause counts one and two were grouped pursuant to § 3D1.2. Consequently, the district court was required to fix a sentence for count two (to run concurrently with the sentence for count one) that was "the lesser of the total punishment and the applicable statutory maximum." § 5G1.2, Commentary. In this case, the lesser of the two was the statutory maximum of 120 months.

Once we reversed on counts one and three, however, the grouping guideline that led to the statutory maximum for count two no longer applied. Thus, it was now appropriate for the government and the district court to focus on count two in the context of Correa's repeated shooting at federal agents from close range and his involvement in the kidnapping. Indeed this rationale does not seem to be lost on Correa. He argues that because the sentence for count two was automatic, his "failure to object to that sentence at the original proceedings could in no way be viewed as a waiver of the right to object to a sentence above the guideline range at the re-sentencing." This reasoning applies equally to the district court's failure to consider, and the government's failure to advance, grounds for departure as to count two since any arguments with respect to count two at the original sentence were purely academic.

In *Knapp*, we followed the same rationale. Our rejection of the vindictiveness argument was based in part in the view that it would have been superfluous to classify the defendant as a persistent felony offender at the first sentencing because his conviction already resulted in a sentence of twenty-five years to life. 46 F.3d at 180. Once the defendant stood convicted of the lesser included offense, however, it was appropriate for the trial court to invoke N.Y. Penal Law § 70.10 and consider such a classification.

Second, Correa's argument assumes that if the district court's actions had not been constrained by the grouping requirement of § 3D1.2 at the first sentencing, it would not have upwardly departed on count two at the second sentencing. Nothing in the record supports this assumption. To the contrary, the district court expressly stated at the second sentencing that "had Mr. Correa been acquitted of the drug conspiracy and the related count, the Court would have likewise departed on the basis of the same virtually unassailable facts."

■ Third, Correa overlooks the fact that, unlike in *Coke* and *Pearce*, this case does not involve a retrial resulting in the same conviction. Rather, the resentencing was based on a conviction solely on one count instead of three. When the offenses of conviction are the same and the sole difference at the second sentencing is an increased sentence, there is at least a basis for presuming vindictiveness. No such presumption arises where, as here, the court considers a departure on a single count after the only other two counts have been dismissed.

We find that because the resentencing was based on a different set of circumstances, the court was free to consider grounds for departure it had not contemplated in the first sentencing proceeding. That is, the resentencing proceeding was appropriately treated as a de novo sentencing, for the remand did not specifically limit the scope of resentencing. *See United States v. Duso*, 42 F.3d 365, 368 (6th Cir.1994) (noting that unless restricted by remand order, district court may "revisit the entire sentencing procedure"); *United States v. Smith*, 930 F.2d 1450, 1456 (10th Cir.) (in resentencing on remand, "the sentencing court [must] begin anew, so that 'fully de novo sentencing' is entirely appropriate" (emphasis omitted)), *cert. denied*, 502 U.S. 879, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991); *United States v. Cornelius*, 968 F.2d 703, 705 (8th Cir.1992) (district court can hear any relevant evidence on issue presented that it could have heard at first hearing).

■ Courts have generally treated resentencing hearings as opportunities for de novo hearings when resentencing occurs as a result of misapplications of the sentencing guidelines. We believe the same principle applies here. When a defendant challenges convictions on particular counts that are inextricably tied to other counts in determining the sentencing range under the guidelines, the defendant assumes the risk of undoing the intricate knot of calculations should he succeed. *Cf. Duso*, 42 F.3d at 368 (noting

that "[t]here is a calculated risk taken by a defendant in appealing his sentence computation"). Once this knot is undone, the district court must sentence the defendant de novo and, if a more severe sentence results, vindictiveness will not be presumed.

Finally, Correa's position disregards the fact that the district court had originally departed upward with regard to count one based on Correa's "higher degree of culpability" than recklessness in shooting at the agents, which was the same conduct that the court viewed as "attempted murder" at the resentencing hearing. Thus, to prohibit the court from considering enhancements or departures at the resentencing based upon this conduct would be a windfall for Correa since it would leave out of the sentencing equation a fact that played a critical part in his initial sentence: that he repeatedly shot at the agents from close range. Furthermore, in vacating counts one and three, we concluded that the evidence was insufficient to support a jury's finding beyond a reasonable doubt that Correa knew that the kidnapping was drug related. We never ruled out, however, that drug relatedness could be factored in at sentencing when relevant conduct was considered and where the standard is the lower one of a fair preponderance of the evidence. In addition, we never questioned the sufficiency of the evidence as to Correa's involvement in the kidnapping. To the contrary, we observed that the evidence was sufficient to indicate that Correa "knowingly participated in a kidnapping." *Atehortva*, 17 F.3d at 552. It was therefore also appropriate for the district court to consider this fact for the first time with respect to count two within the circumstances that warranted an upward departure.

For all of these reasons, we find no basis for concluding that the district court acted vindictively in considering grounds for the upward departure on count two that were not considered at the original sentence.

■ We now turn to whether, apart from any claim of vindictiveness, the Sentencing Guidelines authorized the upward departure in this case. It is settled that "[a] sentencing court may impose a sentence outside the guidelines if the court finds 'that

there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.'" *United States v. Khan*, 53 F.3d 507, 518 (2d Cir.1995) (quoting 18 U.S.C. § 3553(b)). "Once it has been established that certain circumstances may warrant a departure, the district court has wide discretion in determining whether to depart." *Id.* (internal quotation omitted).

Judge Dearie described two grounds for departure: (1) the defendant's participation in a kidnapping and (2) his shooting at the special agents with intent "to seriously injure, if not mortally injure" them or at least "with a gross indifference to [their] lives and safety." We note first that this conduct was not adequately taken into account by the guidelines applicable to Correa's conviction on count two. Thus, the district court appropriately turned to guidelines that are most analogous to the relevant conduct warranting a departure—§§ 2A2.1 and 2A4.1. *See United States v. Rodriguez*, 968 F.2d 130, 140 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 139, 121 L.Ed.2d 92 (1992) (when conduct not taken into account by guidelines provisions applicable to defendant provides basis for upward departure, court should be guided by analogous provisions that take same or similar conduct into account).

As to the first ground for departure, there was sufficient evidence to indicate by at least a preponderance of the evidence that Correa "knowingly participated in a kidnapping." *Atehortva*, 17 F.3d at 552. The offense level for kidnapping under § 2A4.1 is thirty-two, including a six-level enhancement for a ransom demand and a two-level enhancement for use of a dangerous weapon, §§ 2A4.1(b)(1) & (3), corresponding to a sentencing range of 121 to 151 months. On this basis alone, Correa's sentence of 120 months was justified. Moreover, the district court was not precluded from recognizing that the conspiracy was drug-related and that there was a high probability that Correa was aware of that fact, which would have resulted in an even higher sentencing range. § 2A4.1(b)(7).

■ With regard to the second ground for departure, Correa argues that because he

was not indicted for attempted murder of a federal official under 18 U.S.C. § 1114, attempted murder should not have been a basis for departure. We disagree. "[P]roof of unconvicted conduct by a preponderance of the evidence is a sufficient threshold basis for an upward departure." *United States v. Gigante*, 39 F.3d 42, 47 (2d Cir.1994). Thus, even though Correa was not indicted or convicted under 18 U.S.C. § 1114, the court could depart upward if it found by at least a preponderance of the evidence that Correa's actions constituted attempted murder. Given the undisputed evidence that he repeatedly fired a gun at federal agents from close range, the district court did not clearly err in concluding that Correa intended, albeit without premeditation, to murder the federal agents. The analogous provision, § 2A2.1, would result in a sentence of fifty-one months.

Based on these two independent grounds for departure, we conclude that the departure was reasonable. We reject Correa's argument that the sentence was unreasonable because it was roughly three times the maximum of the guideline range. The reasonableness of the departure is measured according to analogous guidelines, not in relation to the underlying offense.

We have reviewed Correa's remaining claims under the double jeopardy provision of the Fifth Amendment and the law of the case doctrine and find them to be without merit. The Supreme Court and this court have clearly held that the double jeopardy provision has no application in this context. *See Pearce*, 395 U.S. at 719–21, 89 S.Ct. at 2077–78; *Coke*, 404 F.2d at 839–41. In addition, the law of the case has no bearing here since the district court did not contravene or circumvent any prior express ruling in this case either of this court or of the district court.

## CONCLUSION

For the foregoing reasons, we affirm the sentence imposed by the district court.