**UNITED STATES of America,
Appellee,**

v.

**JoAnn MCCOY, Appellant.**

No. 01–3052.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 16, 2001.

Decided Feb. 22, 2002.

Lisa B. Wright, Assistant Federal Public Defender, argued the cause for the appellant. A. J. Kramer, Federal Public Defender, was on brief.

Suzanne Grealy Curt, Assistant United States Attorney, argued the cause for the appellee. Kenneth L. Wainstein, Acting United States Attorney at the time the brief was filed, and John R. Fisher and Roy W. McLeese, III, Assistant United States Attorneys, were on brief.

Before: GINSBURG, Chief Judge, HENDERSON, Circuit Judge, and WILLIAMS, Senior Circuit Judge.

Opinion for the court filed by Circuit Judge HENDERSON.

Opinion concurring in part and dissenting in part filed by Senior Circuit Judge WILLIAMS.

**KAREN LeCRAFT HENDERSON,** Circuit Judge:

The appellant, JoAnn McCoy, appeals the district court's May 9, 2001 judgment resentencing her to a 33–month prison term and ordering her to pay $542,781.89 in restitution and a $150 special assessment. She offers two challenges to the district court's judgment.

First, McCoy argues that the district court erred in refusing to consider a legal issue made "newly relevant" by this court's remand for resentencing in *United States v. McCoy*, 242 F.3d 399 (D.C.Cir.) (*McCoy I*), *cert. denied*, — U.S. ——, 122 S.Ct. 166, 151 L.Ed.2d 114 (2001). Second, she challenges the $542,781.89 restitution figure, contending that the district court erred in refusing to *reconsider* that amount in light of her "current ability to pay." Her contentions are without merit and we therefore affirm the district court's May 9 resentencing judgment in both respects.

**I.**

On September 22, 1998 a jury found McCoy guilty of violating: 18 U.S.C. § 1014, by making false statements in a loan application to a bank (Count One); 15 U.S.C. § 645, by making the same false statements to the Small Business Administration (Count Two); and 18 U.S.C. § 1623, by perjuring herself in a 1995 bankruptcy proceeding (Count Three).[1]

On June 3, 1999 the district court imposed prison terms of 37 months each on Counts One and Three and 24 months on Count Two, all to be served concurrently. The court also ordered McCoy to pay $542,781.89 in restitution—at the rate of

---

1. For a complete account of McCoy's conduct supporting the verdict against her, *see McCoy I*, 242 F.3d at 401–02.

$300 per month upon her release from incarceration—and imposed a $150 special assessment.

McCoy appealed to this court, arguing that there was insufficient evidence to support her perjury conviction, *McCoy I*, 242 F.3d at 402–03, and disputing the district court's application of the United States Sentencing Guidelines (U.S.S.G. or Guidelines) "which collectively increased her offense level from 6 to 21, thereby substantially increasing her range of imprisonment." *Id.* at 403. McCoy asserted that the district court erroneously imposed: (i) an eight-point increase in the offense level of her false statement offenses (Counts One and Two), pursuant to U.S.S.G. § 2F1.1(b)(1), for causing a loss of $200,000 to $350,000; (ii) a two-point increase, pursuant to section 2F1.1(b)(2), for "more than minimal planning" of her false statement offenses; (iii) a two-point increase in her false statement offenses level, pursuant to section 3C1.1, for "willfully obstruct[ing] or imped[ing] . . . the administration of justice"; (iv) a one-point increase in her "combined offense level," pursuant to section 3D1.2, because her perjury offense (Count Three) was not grouped with her two false statement offenses; and (v) a two-point increase in her false statement offenses level, pursuant to section 3B1.1(c), for her role as an "organizer, leader, manager, or supervisor in [a] criminal activity." *See McCoy I*, 242 F.3d at 403. Although the district court had applied the same two-point obstruction-of-justice adjustment to McCoy's perjury offense level as it had to her false statement offenses level, she challenged only the two-point addition to her false statement

offenses level. And at no time did she challenge the district court's order that she pay $542,781.89 in restitution.

On appeal, we found "no ground for McCoy's challenge to her perjury conviction," *McCoy I*, 242 F.3d at 403, and we rejected all of McCoy's sentencing challenges save one—her contention that district court improperly imposed a two-point "managerial role" adjustment under section 3B1.1(c). *Id.* at 410; *see also id.* at 404–10. McCoy had argued that her employees were "unwitting participants" in her criminal acts and therefore she could not have been the "organizer, leader, manager, or supervisor" in a "criminal activity." *See id.* at 410. We agreed, holding that "supervision of an unwitting individual cannot justify an enhancement under U.S.S.G. § 3B1.1(c)." *Id.* Accordingly, we remanded for resentencing "with instructions to resolve the ambiguities" we had discovered "in the [district] court's application of U.S.S.G. § 3B1.1." *Id.* (citing 18 U.S.C. § 3742(f)(1) (mandating remand if sentence imposed results from incorrect application of Guidelines)).

On remand, the Probation Office revised the Presentence Report, eliminating the two-point upward adjustment for McCoy's managerial role in the offense. Updated Presentence Report at 3. The change brought her combined offense level down from 21 to 20—*not* from 21 to 19, as the arithmetic might ordinarily produce. In McCoy's case, the Guidelines impose a one-point upward "multi-group adjustment" if the difference between her two offense levels is five to eight points and a two-point multi-group adjustment if the difference is less—i.e., zero to four points.[2]

---

**2.** In the introduction to Chapter 3, Part D, the Guidelines explain why a higher adjustment is warranted where a difference in offense levels is lower, and vice-versa:

The rules in this Part seek to provide incremental punishment for significant additional criminal conduct. The most serious offense is used as a starting point. The other counts determine how much to increase the

*Compare* Presentence Report at 11 *with* Updated Presentence Report at 4. Under section 3D1.4, McCoy's multi-group adjustment (be it one or two) must be added to the higher of her two offense levels to produce her "combined offense level." At sentencing, McCoy's false statement offenses level was 20 and her perjury offense level was 14. *See* Presentence Report at 10–11. Thus, the difference was six and section 3D1.4 called for a one-point multi-group adjustment. Adding one point to the higher level of the two resulted in a combined offense level of 21.[3] *See id.* at 11. On remand, however, her false statement offenses level dropped to 18 because the two-point managerial role adjustment was eliminated. Updated Presentence Report at 3–4. Her perjury level remained at 14. *See id.* at 4. Thus, the difference between the two offense levels was reduced to four and section 3D1.4 called for a *two*-point multigroup adjustment. Adding two points to the higher level of the two resulted in a combined offense level of 20.[4] *See id.*

At the outset of the resentencing proceeding, the district court correctly stated that in *McCoy I* we had remanded the case "for resentencing without the two-level enhancement that was improperly accorded to [McCoy's] sentence.... Thus, the only issue presently before [the district court] is the adjustment of [McCoy's] sentence in accordance with the mandate issued by the Court of Appeals." App. of Appellee, Tab H, at 2 (Resentencing Tr.). The court declined to consider any issue other than elimination of the two-point managerial role adjustment because in *McCoy I* we "stated very clearly what issue [the district court] should address on remand." *Id.* at 4.

Nonetheless, McCoy argued that her perjury offense level should be 12 rather than 14 because, at her original sentencing, the district court erroneously added a two-point obstruction-of-justice adjustment to that level under section 3C1.1. She therefore insisted that the multi-group differential remain at six (18 minus 12) and that her combined offense level become 19 (18 plus one) instead of 20 (18 plus two).[5] She also protested that "[t]he McCoy family's current financial situation does not leave them any hope of paying a half-million dollar restitution obligation." App. of Appellant at 26. In place of the original $542,781.89 restitution order—which itself mandated payment at a rate of $300 per month—she argued that payment at a rate of $300 per month for 10–20 years (for a total of $36,000 to $72,000) "would be more faithful to the statutory considerations and give [her] hope of someday fully meeting her obligation." *Id.* at 27.

---

offense level. The amount of the additional punishment declines as the number of additional offenses increases.

U.S.S.G. Manual, ch. 3, pt. D, introductory cmt. (2001); *see United States v. Valentine,* 100 F.3d 1209, 1212 (6th Cir.1996) (noting that the "principle of declining marginal punishment has been clearly enunciated in the introduction to Chapter 3 of the Guidelines and is implicit in the structure of § 3D1.4, among other provisions").

3. For McCoy—who is in "Criminal History Category I"—a combined offense level of 21 carries a sentencing range of 37–46 months' imprisonment. *See* U.S.S.G. Manual ch. 5,

pt. A (2001). It bears repeating here that the district court originally sentenced McCoy to the 37–month minimum.

4. For McCoy, a combined offense level of 20 carries a sentencing range of 33–41 months' imprisonment. *See* U.S.S.G. Manual ch. 5, pt. A (2001).

5. A 19–point combined offense level, as McCoy pointed out, would carry a sentencing range of 30–37 months' imprisonment. *See* App. of Appellant at 25; *see also* U.S.S.G. ch. 5, pt. A (2001).

The district court resentenced McCoy on May 9, 2001 to concurrent prison terms of 33 months each on Counts One and Three and 24 months on Count Two, all to be served concurrently. The court reassessed the same amount in restitution, $542,781.89, and it reimposed the same $150 special assessment.

## II.

■ McCoy raises two challenges to the district court's May 9, 2001 resentencing. In reviewing these challenges, we "accept the findings of fact of the district court unless they are clearly erroneous" and "give due deference to the district court's application of the [G]uidelines to the facts." 18 U.S.C. § 3742(e); *see also McCoy I*, 242 F.3d at 403–04. We review issues of law *de novo*. *See McCoy I*, 242 F.3d at 404; *United States v. Drew*, 200 F.3d 871, 876 (D.C.Cir.2000).

First, citing our decision in *United States v. Whren*, 111 F.3d 956 (D.C.Cir. 1997), *cert. denied*, 522 U.S. 1119, 118 S.Ct. 1059, 140 L.Ed.2d 120 (1998), McCoy contends that the district court erred at resentencing by refusing to consider the "newly relevant" issue of whether, *at her original sentencing*, the two-point obstruction-of-justice upward adjustment was erroneously added to her perjury offense level under section 3C1.1. Further, she argues that the obstruction adjustment *was* erroneously added, claiming that the "repetition at her criminal trial of precisely the same testimony she was convicted of giving at her bankruptcy trial does not amount to the sort of 'significant further obstruction' required to justify an obstruc-

tion enhancement to a perjury conviction under Application Note 7" to section 3C1.1.[6] Br. of Appellant at 13. Thus, she argues that her perjury offense level should be reduced to 12, that her multigroup adjustment should remain at one point (the difference between 12 and 18 being six) and that her combined offense level should be reduced to 19. For the reasons discussed *infra*, we conclude that McCoy has waived her right to challenge at resentencing the obstruction adjustment to her perjury offense level.[7]

In *Whren*, we held that

upon a resentencing occasioned by a remand, unless the court of appeals expressly directs otherwise, the district court may consider only such new arguments or new facts as are made newly relevant by the court of appeals' decision—whether by the reasoning or by the result.

*Whren*, 111 F.3d at 960. We rejected the *de novo* approach adopted by our sister courts in the Second, Sixth, Eighth, Ninth and Tenth Circuits, under which a "district court may, upon remand, take any evidence and hear any argument that it could have considered in the original sentencing proceeding." *Id.* at 959 (citing *United States v. Moore*, 83 F.3d 1231, 1235 (10th Cir.1996); *United States v. Jennings*, 83 F.3d 145, 151 (6th Cir.), *cert. denied*, 519 U.S. 975, 117 S.Ct. 411, 136 L.Ed.2d 324 (1996); *United States v. Atehortva*, 69 F.3d 679, 685 (2d Cir.1995), *cert. denied*, 517 U.S. 1249, 116 S.Ct. 2510, 135 L.Ed.2d 199 (1996); *United States v. Ponce*, 51 F.3d 820, 826 (9th Cir.1995); *United States*

---

**6.** Application Note 7 to section 3C1.1 provides that an obstruction adjustment "is not to be applied to the offense level for [perjury] except if a significant further obstruction occurred during the investigation, prosecution, or sentencing of the obstruction itself." U.S.S.G. Manual § 3C1.1, cmt. n.7 (2001).

**7.** Accordingly, we need not address the underlying merits of McCoy's Application Note 7 argument.

*v. Cornelius*, 968 F.2d 703, 705 (8th Cir. 1992)). We adopted instead a "waiver" approach, under which "a defendant may argue at resentencing that the court of appeals' decision has breathed life into a previously dormant issue, but he may not revive in the second round an issue he allowed to die in the first." *Id.* at 960; *see also United States v. Ticchiarelli*, 171 F.3d 24, 32 (1st Cir.) (adopting *Whren* approach), *cert. denied*, 528 U.S. 850, 120 S.Ct. 129, 145 L.Ed.2d 109 (1999); *United States v. Marmolejo*, 139 F.3d 528, 530–31 (5th Cir.) (same), *cert. denied*, 525 U.S. 1056, 119 S.Ct. 622, 142 L.Ed.2d 561 (1998); *United States v. Parker*, 101 F.3d 527, 528 (7th Cir.1996) (adopting waiver approach similar to that of *Whren*). We found the waiver approach preferable to *de novo* resentencing because:

> *De novo* resentencing is in essence a license for the parties to introduce issues, arguments, and evidence that they should have introduced at the original sentencing hearing. The alternative of requiring the parties to raise all relevant issues at the original sentencing hearing serves both equity and efficiency: Each party gets early notice of the other's position, and the district court can resolve all material issues early on—when the record is fresh in mind—and in a single proceeding, thereby minimizing the scope of any second proceeding, i.e., should the first result in a remand.

*Whren*, 111 F.3d at 959–60.

■ McCoy claims that our remand in *McCoy I* set off a chain reaction that has "breathed life into" the obstruction issue. While McCoy can show the two-point upward adjustment to be *relevant*,[8] *Whren's*

holding declares that whether the obstruction issue is *newly* relevant turns upon whether or not McCoy had reason to challenge the adjustment *at her original sentencing*. *Whren*, 111 F.3d at 960 ("A defendant should not be held to have waived an issue if he did not have a reason to raise it at his original sentencing; but neither should a defendant be able to raise an issue for the first time upon resentencing if he did have reason but failed nonetheless to raise it in the earlier proceeding."). McCoy argues that she "had no reason to raise the obstruction issue until this Court's decision led to an offense level correction that suddenly rendered the obstruction issue material to her sentence." Br. of Appellant at 17. At oral argument, she iterated that the only relevant obstruction adjustment at her original sentencing was the two-point addition to the "controlling" false statement offenses level. She is mistaken.

McCoy had ample reason in the first round of proceedings to challenge the two-point obstruction addition to her "non-controlling" perjury offense level. Her false statement offenses level, before the first appeal and with the obstruction adjustment (to which she objected at her original sentencing and on appeal), was 20. *See* Presentence Report at 10–11. Her perjury offense level, before the first appeal and with the obstruction adjustment (to which she now objects for the first time), was 14. *See id.* at 11. Contrary to McCoy's assertion, the obstruction adjustment to the "non-controlling" perjury offense level became "relevant" the very instant she challenged the obstruction addition to the false statement offenses level. Had she persuaded the sentencing judge (as, we pre-

---

**8.** The remand did indeed reduce McCoy's false statement offenses level from 20 to 18. Thus, her perjury offense level of 14 came within four points, causing the multi-group adjustment to increase from one to two. The increase in the multi-group adjustment, in turn, raised the combined offense level from 19 to 20 and the increase in the combined offense level raised her minimum sentence from 30 months to 33 months.

sume, was her purpose), McCoy's "controlling" false statement offenses level would have been reduced to 18, bringing it within four points of her perjury offense level and increasing the multi-group adjustment by one for a combined offense level of 20. She had just as much incentive to keep the gap at six then as she did at resentencing. In short, McCoy's Application Note 7 argument does not fall within the "newly relevant" exception to *Whren*'s general bar against new arguments at resentencing and it was therefore waived.

■ Second, McCoy contends that the district court erred in refusing to *reconsider* the original $542,781.89 restitution amount in light of her "current ability to pay." She correctly observes that our decision in *United States v. Rhodes*, 145 F.3d 1375 (D.C.Cir.1998), permits a resentencing court to consider facts that were unavailable or non-existent at the original sentencing. *Rhodes*, 145 F.3d at 1377–78 ("[C]onsideration of post-initial sentencing events, in those rare circumstances in which such events may become *relevant*, neither contravenes *Whren*'s concern with ensuring that parties receive fair notice of their opponent's arguments at initial sentencing nor undermines its goal that district courts 'resolve all material issues ... when the record is fresh in mind.'" (quoting *Whren*, 111 F.3d at 960) (emphasis added)). She asserts that her current ability to pay restitution is such a fact. Her assertion is without support.

The financial situation in which McCoy now finds herself is utterly irrelevant to the *restitution* challenge she purports to mount. The district court's original $542,781.89 restitution order was to be paid at the rate of $300 per month. *See* App. of Appellant at 17. McCoy did not argue at resentencing, and does not argue now, that she cannot make the $300 monthly payments. Instead, she claims that "given the losses the family [has] suf-

fered as a result of her offense conduct" and the "significant monthly deficit that [is] being made up with help from [her] extended family," she will not realistically "be able to pay *more* than the $300 per month the [c]ourt had ordered at the initial sentencing." Br. of Appellant at 22 (emphasis added). She acknowledges that she has simply "requested that the restitution obligation be reduced to between $36,000 and $72,000–which could be paid off at the rate of the $300 per month ordered by the court in 10 to 20 years." *Id.* If McCoy can afford to pay $300 per month currently—a fact she does not dispute—she has no relevant ground to object to the reimposition of a restitution order mandating payment at precisely that rate.

McCoy resists this conclusion, arguing that "by ordering minimum payments of only $300 per month, the resentencing court was implicitly recognizing that [she] did not have the ability to pay more and that it was unlikely she would ever be able to pay the full amount. (It would take 150 years to pay the full amount at a rate of $300 per month)." *Id.* at 24. The possibility that McCoy will not be able to pay the full $542,781.89 balance during her lifetime is one that existed at the time she was originally sentenced. In failing to protest the restitution order at that time—and, subsequently, on appeal in *McCoy I*—she waived the half-hearted objection she now raises. We conclude, therefore, that the district court properly declined to reconsider its original restitution order.

For the foregoing reasons, the district court's May 9, 2001 resentencing judgment is

*Affirmed.*

STEPHEN F. WILLIAMS, Senior Circuit Judge, concurring in part and dissenting in part:

I agree with the panel's disposition of McCoy's claim for reconsideration of the

restitution element of her sentence. I disagree, however, with its conclusion that McCoy has waived her objection to the two-point obstruction bump for the offense level on the perjury charge.

Sentencing nowadays proceeds under the United States Sentencing Guidelines and involves complexities and contingencies not unlike those of the Internal Revenue Code. Just as under the IRC an increase in income at certain levels will reduce the benefit of a taxpayer's deductions, see 26 U.S.C. § 68 (reducing allowable deductions by 3% of the excess of adjusted gross income over applicable statutory threshold); see also *id.* § 151(d)(3) (reducing personal exemption amount by 2% for every $2,500 in income over applicable statutory threshold), so under the Guidelines a decrease in the "offense level" for the higher-scored of two related crimes may end up changing the effect of the lower-scored crime, and more particularly, change the impact of the offense level assigned to the lesser crime. As a result, an issue that at one point appears purely hypothetical may move into prominence once adjustment is made elsewhere in the calculation.

This of course is what happened to McCoy. See Maj. Op. at 1060–61. On her initial sentencing the district court found her offense level for the false statement charge to be 20 and for perjury 14. Because the difference of six (20 minus 14) fell between five and eight points, under § 3C1.1's provision for a "multi-group adjustment" the perjury charge caused a one-point upward bump in her combined score, which the district court accordingly set at 21. If McCoy had at that point argued for a reduction of her perjury offense level from 14 to 12, as she now does, she would rightly have been told it was immaterial; the multi-group adjustment is the same for an eight-point differential as

for a six-point differential, and the perjury conviction's only impact on the combined offense level was via that "adjustment."

On her first appeal we saw merit in her claim that the district court had perhaps given her an improper two-point bump for her managerial role in the false-statement offense. Unsure as to the district court's understanding of the standard and as to its view of the facts, we remanded. *United States v. McCoy,* 242 F.3d 399, 409–10 (D.C.Cir.2001). On remand, the district court in fact deleted the two-point "managerial" bump. With the false statement charge falling to an offense level of 18, the gap between it and the perjury score fell to four (18 minus 14). Following § 3C1.1, the district *raised* the multi-group adjustment to two points, now producing a combined score of 20. With the reduction in the false statement offense level, the issue McCoy now raises became material: reducing the perjury offense level from 14 to 12 would restore the gap to six points and thus take the multigroup adjustment back down to one.

Accordingly, McCoy then put before the district court her complaint that it had erroneously given her perjury charge a two-point bump for "obstruction of justice." The district court refused to entertain the claim because, in its view, the *only* issue properly before it was the two-point "managerial" bump in the false statement charge. Resentencing Hearing Tr. at 13 (May 9, 2001). (Not exactly: it assumed that modifying the multi-group adjustment was in order.) The majority today holds that McCoy's argument against the obstruction supplement in the perjury context is not "newly relevant" and that McCoy waived it by failing to raise it during the initial hearing and appeal. This seems to me both an unsound reading of our decision in *United States v. Whren,* 111 F.3d 956 (D.C.Cir.1997), and likely to

lead to inefficient and needlessly complex sentencing challenges.

In *Whren* we held that

> ... upon a resentencing occasioned by a remand, unless the court of appeals expressly directs otherwise, the district court may consider only such new arguments or new facts *as are made newly relevant by the court of appeals' decision—whether by the reasoning or by the result.*

*Id.* at 960 (emphasis added). We also said, "A defendant should not be held to have waived an issue if he did not have a reason to raise it at his original sentencing." *Id.*

The present case exposes an ambiguity in *Whren.* As I understand the majority, an initial appeal renders an issue "newly relevant" if but only if the decision opens up an issue that previously could not have been even *potentially* relevant. Apart from issues injected by the court of appeals on its own hook, and presumptively from out of left field (which we're generally not supposed to do), I'm not sure what issues could fall into this group—apart, obviously, from any "newly relevant" issues that the court of appeals explicitly tells the district court to consider on remand.

The more natural reading, I think, would be that an issue is "newly relevant" if it will, entirely as a result of changes resulting from the first appeal, for the first time have an actual impact on the sentence. The only circuit court to adopt or even seriously consider *Whren,* the First Circuit in *United States v. Ticchiarelli,* 171 F.3d 24, 32–33 (1st Cir.1999), so understands it. In the initial sentencing there, the district court had fitted a large weight of "hashish oil" into the guidelines system by treating each kilo of hashish oil as the equivalent of 50 kilos of marijuana. The court of appeals reversed, saying that the oil must be treated as equal to marijuana.

On remand, the defendant then raised an issue about computation of the weight of the drugs' *containers,* an issue that had been—because of the numbers in question—irrelevant under the district court's initial (erroneous) treatment of hashish oil. The district court refused to hear the claim, treating its omission from the first appeal as a waiver. The court of appeals rejected the waiver theory, quoting *Whren* at some length and reading it to allow the defendant to raise his "container" issue in the second appeal, because he had not had "sufficient incentive to raise the issue in the prior proceedings." *Id.* at 33. Of course in this circuit, under the panel's view, fear of this court's waiver doctrine *would* supply an incentive, but the First Circuit plainly saw incentive as depending on whether the issue could change the sentence under the view taken by the district court on the other issues. As no change was possible under those views, there was no waiver. This strikes me as the sound and natural reading of *Whren.*

Besides draining the *Whren* exception of virtually all meaning, the panel view here imposes an undue burden on counsel and will ultimately increase the burdens on the court. The impact on defense counsel is plain. Counsel must, in the initial appeal (and therefore, of course, at the initial district court sentencing), consider every step of the presentence report's reasoning, to determine whether any such step might not conceivably have an adverse effect down the road if the defendant won on any of its proposed changes—no matter how immaterial the step may be on the view actually taken by the report. And, of course, he or she must articulate and argue these seemingly moot issues before the district court and the court of appeals.

The court may suppose that the resulting burden will fall only on counsel (though I do not know why a court should disre-

gard a waste of others' resources). But even from a narrowly judicial perspective, the rule will generate needless complexity, causing briefs to be cluttered with second-order issues that are hypothetical and in many instances ultimately irrelevant (in fact, as we shall see below, in most instances). Cf. *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 740 (D.C.Cir.1995) (holding that appellees should not be forced "to put forth every conceivable alternative ground for affirmance," and expressing serious concerns about increasing "complexity and [the] scope of appeals"); cf. also *Field v. Mans*, 157 F.3d 35, 41–42 (1st Cir.1998); *Exxon Chemical Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475, 1478–79, 1482 (Fed.Cir.1998); *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 954 (Fed.Cir. 1997). It might be consoling to think that counsel will provide the court with a handy roadmap: for example, "If the court agrees with point 2, then points 3 and 4 are irrelevant, and the court should proceed directly to point 5." Nothing in my experience on the bench supports the notion that counsel will do so; rarely if ever do counsel even bother to say, for example, "For reversal, appellant must prevail on both arguments I and II."

While a number of circuits have adopted a rule of *de novo* resentencing, see, e.g., *United States v. Jennings*, 83 F.3d 145, 151 (6th Cir.1996); *United States v. Atehortva*, 69 F.3d 679, 685 (2d Cir.1995); *United States v. Cornelius*, 968 F.2d 703, 705 (8th Cir.1992), there is good reason not to go so far. We said in *Whren* that such a rule "is in essence a license for the parties to introduce issues ... that they should have introduced at the original sentencing hearing." 111 F.3d at 959. Quite true. A better solution is to give *Whren*

its most obvious reading, as the First Circuit did in *Ticchiarelli*: allow counsel to defer any second-order issue, i.e., any issue that can come into play only if the defendant should secure victory on a first-order issue. See also *United States v. Parker*, 101 F.3d 527, 528 (7th Cir.1996) ("Only an issue arising out of the correction of the sentence ordered by this court [can] be raised in a subsequent appeal.").

Reversal rates may influence one's choice among the alternative readings of *Whren*. Multiple appeals from a single case cost judicial (and lawyers') resources, but increments in the complexity of single appeals also cost resources. If district courts are seldom reversed, the broad (First Circuit) reading of *Whren* makes sense. After all, if a litigant only has a 10% chance of reversal on the first-order issue, there is little reason to burden courts with second-order issues that will become relevant only 10% of the time. In contrast, if district courts are frequently reversed on first-order issues, then there is more to be said for the narrow reading of *Whren*, as the frequency of second-order issues becoming relevant will concomitantly increase.

In fact it appears that reversal rates are low. According to statistics kept by the Administrative Office for the United States Courts, the reversal rate in this circuit is 12.9% generally, and 12.1% in criminal cases. For all circuits combined, the reversal rate is 9.5% generally, and only 6.3% in criminal cases. See *Judicial Business of the U.S. Courts* 102 tbl. B–5 (2000) (reporting rates for appeals terminated on the merits for the 12–month period ending September 2000).[1] Reversal rates for sen-

---

1. The reversal rates reported here are those shown in the Administrative Office's report. The statistics may be somewhat imprecise for purposes of this analysis because cases need

not be affirmed or reversed, but can be disposed of in other ways. Nonetheless, recalculating the rates to consider only cases that were either affirmed or reversed yields simi-

tencing issues, of course, may be higher, but given the frequency of sentencing issues, a high reversal rate on such issues would be reflected in high average rates. Thus the data tend to support the broader reading of *Whren*—allowing a defendant to raise on his or her second appeal issues that were entirely hypothetical on the first round.

I respectfully dissent from the court's disposition of McCoy's perjury charge claim. As the majority finds that claim waived, I do not reach the merits of the

issue. Cf. *Daingerfield Island Protective Society v. Babbitt,* 40 F.3d 442, 448 (D.C.Cir.1994) (Wald, J., dissenting in part); cf. also *Boggs v. Rubin,* 161 F.3d 37, 44 (D.C.Cir.1998) (Rogers, J., concurring in part and dissenting in part).

---

lar numbers: for this circuit, 13.2% generally and 14.6% in criminal cases; for all circuits, 9.9% generally and 7.1% in criminal cases. Statistics for earlier years yield similar results. See *Judicial Business of the U.S. Courts* 108 tbl. B–15 (1999); *Judicial Business of the U.S. Courts* 114 tbl. B–5 (1998).