**UNITED STATES of America,
Appellee,**

v.

**TIN YAT CHIN, Defendant–Appellant.**

**Docket No. 06–1048–CR.**

United States Court of Appeals,
Second Circuit.

Argued: Nov. 15, 2006.

Decided: Jan. 30, 2007.

Margo K. Brodie, Assistant United States Attorney (Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, Peter A. Norling, Assistant United States Attorney, on the brief), Brooklyn, NY, for Appellee.

Diarmuid White, White & White, New York, N.Y. (Brendan White on the brief), for Defendant–Appellant.

Before McLAUGHLIN and SACK, Circuit Judges, and RAKOFF, District Judge.*

RAKOFF, District Judge.

The Government alleged that Tin Yat Chin, using the names Mok Wah and Tan C. Dau, defrauded Chinese Americans of more than a million dollars by posing as an employee of the agency once known as the Immigration and Naturalization Service ("INS") who could, for a fee, obtain work visas authorizing relatives living in China to immigrate to the United States. On this basis, a grand jury charged Chin with one count of impersonating a federal employee in violation of 18 U.S.C. § 912, and, because Chin failed to report the proceeds of the fraud, with three counts of tax evasion in violation of 26 U.S.C. § 7201. Chin, for his part, maintained that this was a case of mistaken identity, that he had no involvement in the fraud, and that he realized no income therefrom.

In January 2003, a jury convicted Chin of all four counts. On appeal, this Court reversed on the ground that the district court erred in refusing to allow Chin to introduce in evidence certain credit card receipts that tended to show that Chin was in New York during a period when the Government alleged that defendant was in China effecting the fraud. *See United States v. Tin Yat Chin*, 371 F.3d 31 (2d Cir.2004). On retrial, the Government called multiple witnesses who testified, *inter alia*, that they met Chin in China during the period in question, where he was posing under assumed names as a corrupt INS employee. As part of the defense case, Chin introduced the New York credit card receipts that had been excluded from the first trial, as well as the testimony of a handwriting expert, Roger Rubin, who opined that the signatures on the credit card receipts were Chin's. Over objection, the Government was then permitted to present on rebuttal the testimony of its own handwriting expert, John Sang, who opined that many of the receipts were probably not signed by Chin. The jury returned a verdict of guilty on all four counts.

■ On this appeal from the second conviction, Chin's most colorable claim concerns the Government's failure to dis-

* The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

close its intent to call Sang, and anything about his expert testimony, until the day before the defense concluded its case. Well before the start of the second trial, the defense had indicated its intent to call Rubin as its handwriting expert and had made the disclosures regarding his testimony required by Rule 16(b)(1)(C) of the Fed.R.Crim.P. The Government, for its part, had already retained Sang as its expert and had obtained from him an opinion challenging the authenticity of Chin's signatures on the credit card receipts. Yet, knowing full well that the authenticity of these signatures would be a hotly contested issue in the case, the Government chose to remain entirely silent, until one day before the end of the defense case, both as to the fact that it had retained a handwriting expert and as to the testimony he was expected to give.

At a minimum, this was a sharp practice, unworthy of a representative of the United States. The Government seeks to justify its surprise move by noting that Rule 16 only requires it to make pre-trial disclosures with respect to expert testimony that it intends to elicit in "its case-in-chief," Rule 16(a)(1)(G) Fed.R.Crim.P. *See, e.g.,* *United States v. Frazier,* 387 F.3d 1244, 1269 (11th Cir.2004). But it does not follow that the Government has carte blanche in every case to spring a surprise expert witness on an unsuspecting defendant who has long since disclosed his own expert's prospective testimony. For no defense counsel, no matter how experienced, can fairly be asked to cross-examine on a moment's notice a witness who comes clothed with all the impressive credentials and specialized training of an expert and whose opinions and methods with respect to the case at hand have been subject to no prior

scrutiny. In an appropriate case, such an ambush might well violate due process. *Cf. Wardius v. Oregon,* 412 U.S. 470, 476, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973) ("It is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State.").

Here, however, the Government's nondisclosure, though regrettable, did not rise to a due process violation. For the able district court, although overruling Chin's objection to the Government's calling Sang on rebuttal, then gave defense counsel what he needed: time to prepare to cross-examine Sang. Specifically, the district court granted the defense a one-day continuance for this purpose. Although Chin now claims he needed more than one day, he made no claim at the time that one day was insufficient to prepare his cross-examination.[1] Furthermore, the district court could reasonably infer that defense counsel, in preparing his own handwriting expert to testify, had sufficiently immersed himself in the technicalities of handwriting analysis that he could adequately evaluate and prepare to combat Sang's testimony over the one-day break. Indeed, even on this appeal, Chin has proved unable to specify with any particularity how he was prejudiced by not receiving a longer continuance. Accordingly, we conclude that, thanks to the prudence of the district court in granting the continuance, Chin was not deprived of due process.

Chin's other points on this appeal may be disposed of briefly. Chin's claim that the evidence showed only that Chin purported to be a *former* INS employee (which he was), rather than a *present* INS

---

1. Chin did request more time to call still another expert to testify that handwriting analysis was not an exact science, but the district court properly denied this vague and untimely request as not likely to be helpful to the jury.

employee (which he was not)[2] is directly contradicted by the testimony of Li Zhen Zeng, who testified that Chin showed her a badge and stated that he "currently" worked at INS. Further, several witnesses testified that Chin simply told them that he "worked" at the INS, thereby implying that he currently worked at the INS.

■■■ Chin also claims that his sentence of 135 months' imprisonment—15 more months than that imposed by the different district judge who conducted the first trial—was "vindictive." It is well settled that due process of law "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *North Carolina v. Pearce*, 395 U.S. 711, 725, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The goal of the principles established in *Pearce*, however, "is to prevent the evil of vindictiveness of a sentencing judge, and not simply enlarged sentences after a new trial." *United States v. Atehortva*, 69 F.3d 679, 683 (2d Cir.1995)(internal quotation marks omitted). A second judge seems an unlikely candidate for a charge of vindictiveness based on the overturning on appeal of a judgment previously entered by another judge. *Id.* But in any event, when a new trial is held before a different judge, he or she is of course expected to exercise discretion entirely independently from the judge who conducted the first trial. The fact that the second judge did so here is, alone, no indication that he was improperly motivated in determining the sentence. Moreover, the district judge at the second trial specifically found that Chin had solicited false trial testimony at the second trial

from his wife and brother, and thereby attempted to obstruct justice, warranting a two-point enhancement. This added factor, which was amply warranted by the evidence, more than justified the increased sentence.

Finally, Chin's claim that the district court's determination of the restitution amount under the Mandatory Victim Restitution Act, 18 U.S.C. §§ 3663A et *seq.*, violates his alleged constitutional right to have this determination made by a jury is foreclosed by our holding to the contrary in *United States v. Reifler*, 446 F.3d 65, 118 (2d Cir.2006) ("[T]he *Booker–Blakely* principle that jury findings, or admissions by the defendant, establish the 'maximum' authorized punishment has no application to [Mandatory Victim Restitution Act] orders of restitution.").

Accordingly, the judgment of the district court is hereby affirmed in all respects.

---

**2.** 18 U.S.C. § 912 only applies to persons impersonating a present government employee. Specifically it provides that: "Whoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof, and acts as such, or in such pretended character demands or obtains any money, paper, document, or thing of value, shall be fined under this title or imprisoned not more than three years, or both."